**In re ENERGY COOPERATIVE,**
**INC., Debtor.**

**Bankruptcy No. 81 B 5811.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Nov. 10, 1988.

Supplemental Opinion on Motion to
Reconsider and Motion to Clarify
Jan. 24, 1989.

A. Daniel Feldman, Schwartz, Cooper, Kolb, Chicago, Ill., pro se and for Creditors' Committee.

David M. Schiffman, Sidley & Austin, Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

The law firm of Schwartz, Cooper, Kolb & Gaynor, Chartered ("SCKG") has brought a Request for Payment of Final Compensation and Reimbursement of Expenses ("Application") in connection with legal services provided in the above-captioned bankruptcy case ("Case"). The Case was commenced under Chapter 11 on May 15, 1981. On May 28, 1981, a Creditors' Committee was selected to represent the unsecured creditors. On June 12, 1981, SCKG was approved as counsel for the Creditors' Committee.

On May 31, 1984, the Case was converted to Chapter 7. On June 4, 1984, Mr. Jay Steinberg ("Trustee") was appointed Trustee. The Trustee moved on August 28, 1984, to employ SCKG as his counsel. On September 20, 1984, Judge Hertz denied that motion. Subsequently, the Trustee employed the law firm of Miller, Shakman, Nathan & Hamilton as his counsel.

SCKG was awarded fees by order of Judge James dated August 14, 1985, in the amount of $556,502.25 less a $75,000 retainer plus $23,567.03 in expenses. On December 30, 1985, Judge Hertz authorized payment of 25 percent of that amount, or $126,267.07, leaving a balance due of $328,802.21.

In this Application, SCKG is requesting the amount of $1,223,127.85 as compensation and reimbursement of expenses through the date of initially filing the Application. This amount is composed of fees of $543,928.25 for the period ending with the conversion of the Case to Chapter 7, plus fees of $180,637.50 for the post-conversion period. That amount also includes $827.89 in expenses and is net of a $75,000 retainer and $102,700.04 in interim compensation. That amount is also composed of a multiplier, or enhancement, of $675,434.25, which SCKG seeks to justify on various grounds, including its risk of nonpayment, the delay in payment, the novelty and complexity of legal issues, the quality of the services rendered, and the results obtained. SCKG asserts that it has devoted considerable time and expertise post-conversion, all to the benefit of the estate.

Various parties have filed objections to the Application, including the Member-Owners of the debtor[1] ("Member-Owners"), Atlantic Richfield Company, Energy Cooperative Inc.'s lending banks ("Banks") and Societe Nationale pour la Recherche, la Production, le Transport, la Transformation, et al Commercialisation des Hydrocarbures ("Sonatrach"). In response to these objections, SCKG has requested this Court to reconsider the September 20, 1984, order by Judge Hertz refusing to allow the Trustee to employ SCKG as his counsel; but SCKG falls short of requesting that current counsel be removed.

This Court finds that: (a) there are no grounds to reconsider Judge Hertz's Order of September 20, 1984 ("Order"); (b) there is no authority for allowing any fees or expenses to SCKG for the period beginning with the conversion of this Case to Chapter 7 on May 31, 1984; (c) there is no basis for enhancing SCKG's fees for services rendered for the period ending with May 31, 1984; and (d) that SCKG is entitled to be compensated for delay and may be entitled to allocation. Each of these points will be discussed separately.

### RECONSIDERATION OF THE ORDER

Under Bankruptcy Rule 9024, Rule 60 of the Federal Rules of Civil Procedure applies to a petition seeking relief from

---

1. The nature and relationships of the various entities are fully described in *Koch Refining, v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir.1987), and will not be repeated here.

final judgments or orders. *See, e.g., Matter of Whitney-Forbes, Inc.*, 770 F.2d 692 (7th Cir.1985); *Matter of Chung-King, Inc.*, 753 F.2d 547 (7th Cir.1985); *In re Toth*, 61 B.R. 160 (Bankr.N.D.Ill.1986). If the Order is of a type to which Rule 9024 applies, then, Rule 60(b) sets forth the exclusive grounds for relief from the Order. A petition for relief based upon the grounds set forth in subsections (1)–(3) must be brought not more than one year after the September 20, 1984, Order was entered, that is, no later than September 20, 1985. Therefore, this Court would not even have to consider whether the grounds of mistake, etc.; newly discovered evidence, etc.; or fraud, etc. exist.

The remaining three grounds are: "(4) the judgment [or Order] is void; (5) the judgment [or Order] has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment [or Order] should have prospective application; or (6) any other reason justifying relief from the operation of the judgment [or Order]."

Even if the order is not of a type to which Rule 9024 and Rule 60(b) apply, this court would not be free to lightly set aside a prior order of another coordinate judge. Bankruptcy courts have been asked in other cases to reconsider prior orders in connection with employment of counsel. The weight of authority requires the court to refrain from overturning such prior orders absent compelling circumstances. *Matter of Westfall*, 73 B.R. 186, 193 (Bank.W.D. Ark.1986); *In re HCS Corp.*, 59 B.R. 307, 309 (Bankr.S.D.Cal.1986). Cf. *In re Couch*, 43 B.R. 56 (Bankr.W.D.Ark.1984). As stated by the *Westfall* court: "If the undersigned judge is to disregard a prior order of another coordinate judge, at least a showing of an actual impropriety must be made." 73 B.R. at 193.

In this case, no showing of any impropriety has been made in connection with Judge Hertz' Order. The most SCKG can claim is that it disagrees with that Order. It had the opportunity to present its grounds at the time the Order was made. Without compelling reasons, which SCKG has not shown, it would fly in the face of judicial economy and finality for a court to willy-nilly reconsider orders previously entered in a case. Nothing would ever be settled and the business of administering cases would come to standstill.

Furthermore, it is inescapable that for this Court to grant relief from the Order would be to compensate SCKG for services rendered without the approval of the Court, and if rendered in anticipation of compensation, indeed contrary to the orders of the Court. Regardless of whether Rule 60 limits this Court's reconsideration of the Order, approval of SCKG's services at this late juncture would amount to a *nunc pro tunc* authorization.

Such *nunc pro tunc* authorization or approval is highly disfavored and is to be granted only in extraordinary circumstances, where the delay in seeking approval is due to hardship beyond counsel's control. See *Matter of Arkansas Co.*, 798 F.2d 645, 649–50 (3d. Cir.1986); *In Re Aladdin Petroleum, Co.*, 85 B.R. 738, 739–40 (Bankr. W.D.Tex.1988); *In Re Command Services Corp.*, 85 B.R. 230, 232 (Bankr.N.D.N.Y. 1988); *Matter of Fleeman*, 73 B.R. 579, 581–82 (Bankr.M.D.Ga.1987). SCKG's circumstances are neither extraordinary, nor are they due to hardship beyond SCKG's control.

In addition, SCKG has waited close to four years to ask for this approval. It has shown no reason why it could not have made such a request earlier. The only relief it seeks by making such a late request is the payment of its fees. Whatever equitable arguments SCKG may have for reconsidering the Order are outweighed by its laches in making the request for reconsideration.

Thus, this Court finds no grounds for *nunc pro tunc* approval of the post-conversion services rendered by SCKG, especially where granting such approval would involve modifying a pre-existing order entered by the Court. The Motion for Reconsideration of the Order is denied.

### POST–CONVERSION COMPENSATION

Bankruptcy Code Section 330(a), 11 U.S.C. § 330(a), authorizes the payment of compensation to a professional person only if such person is employed under either Section 327 or Section 1103 of the Bankruptcy Code, or if such person is the debtor's attorney. Section 327 authorizes the Trustee to employ professional persons. The Trustee sought such employment for SCKG and such employment was denied by the Order. Section 1103(a) authorizes a Chapter 11 creditors' committee to employ counsel. The parallel section under Chapter 7, Section 705, contains no such authorization. Furthermore, Section 330(a) cross references only to Section 1103, not to Section 705.

Section 503(b)(3)(D) authorizes the payment of compensation as an administrative expense to certain entities making a substantial contribution in a case under Chapter 9 or Chapter 11, and Section 503(b)(4) authorizes compensation to a professional person employed by such an entity. However, by its terms, such compensation may only be paid for substantial contributions to a Chapter 9 or Chapter 11 case, not a Chapter 7 case.

 This review of the statutory provisions leads to the conclusion that a court may not authorize compensation for counsel to a Chapter 7 creditors' committee. Since SCKG was never authorized to act as counsel for the Trustee, and never served in any official capacity in this Case other than as counsel to the Chapter 11 Creditors' Committee, SCKG's right to compensation from the estate terminated along with the existence of such Chapter 11 Creditors' Committee.

SCKG argues that the omission of any provision authorizing compensation for counsel to a creditors' committee in Chapter 7 is nothing more than legislative silence, a *casus omissus* which never came to Congress' attention. In the face of such claimed legislative silence, SCKG argues, based upon equitable principles, that it should be entitled to compensation out of the very fund it has created. It makes this argument notwithstanding the fact that unsecured creditors in the Case have yet to see their first dime from the estate.

This Court does not agree that Congress simply failed to provide for counsel to a Chapter 7 creditors' committee. To the contrary, the legislative history belies such a claim, containing as it does the statement that "[t]here is no provision for compensation or reimbursement of its [a Chapter 7 creditors' committee] counsel." H.Rep. No. 95–595, 95th Cong., 1st Sess. 379, 380 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 94 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5880, 6336. See *In Re Dominelli*, 788 F.2d 584, 586 (9th Cir. 1986); *In Re Willbet Enterprises, Inc.*, 43 B.R. 90, 92 (Bankr.E.D.Pa.1984).

SCKG nevertheless argues that the circumstance of this Case's conversion from Chapter 11 to Chapter 7 is special. SCKG argues that, based upon professional ethics, it could not simply pack up and go home on May 31, 1984, the date of conversion, without seeing to it that the baton was passed into competent hands, fortified and armored for the challenges to come. SCKG concededly was the only counsel uniquely able to educate its successor.

The court in *In Re Kel–Wood Timber Products Co.*, 88 B.R. 93 (Bankr.E.D.Va. 1988) considered and rejected counsel's argument in circumstances remarkably similar to SCKG's. In that case, counsel was employed by the unsecured Chapter 11 creditors' committee. The case was later converted to Chapter 7. Counsel continued to provide legal services after conversion and sought compensation for those services. Unlike our case there was never an order denying counsel's petition for employment.

The court denied counsel's application for such compensation, relying principally upon Bankruptcy Code Section 34b which, in effect, disbands the Chapter 11 Creditors' Committee upon conversion to Chapter 7. As the court stated:

> The Code, however, does not provide for the compensation of attorneys representing a Chapter 7 Creditor's Committee and no evidence has even been offered suggesting the Applicant has been em-

ployed by such a committee. As a consequence, this Court must find that the conversion to Chapter 7 and the ensuing termination of the Chapter 11 Order for Relief results in the dissolution of any committee appointed under 11 U.S.C. § 1102 and similarly prevents any award of attorneys' fees from the estate for post-conversion services. Therefore, this Court finds that the statutory authority for granting the Applicant's request for compensation after the entry of a conversion order does not exist and that the Applicant's award must be limited for [sic] services rendered prior to the conversion.

Id. at 95.

In this case as well, SCKG does not even claim that it was employed by a Chapter 7 creditors' committee. Here, as well, the Case was converted from Chapter 11 to Chapter 7 resulting in the dissolution of the Chapter 11 Creditors' Committee, the only entity whose employment of SCKG would have validated SCKG's claim for compensation from the estate. Therefore, here as well, this Court must find that the statutory authority for post-conversion compensation for SCKG does not exist and must deny SCKG any and all compensation for the period beginning May 31, 1984, the date of conversion of this Case from Chapter 11 to Chapter 7.

### FEE ENHANCEMENT

SCKG seeks enhancement of its fee beyond the "lodestar" amount, that is, a reasonable number of hours times a reasonable hourly rate. SCKG seeks this enhancement based upon the quality of its representation, the novelty and complexity of the issues it has dealt with in this Case, its special skill and experience, the results it has obtained, delay in receipt of its fees, and its risk of nonpayment. As pointed out by the Supreme Court in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*):

"The 'novelty [and] complexity of the issues', 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as bases for increasing the fee award...." (Quoting *Blum v. Stenson*, 465 U.S. 886, 898–901 [104 S.Ct. 1541, 1548–1550, 79 L.Ed.2d 891] (1984)).

Although the Supreme Court has not absolutely ruled out such enhancement, it has indicated that it is to be granted only in rare and exceptional cases.

■ This Case is not such a rare and exceptional case. This Court will not gainsay that SCKG has done a quality job, that its creativity, perseverance and considerable abilities have rejuvenated a lifeless Energy Cooperative so that a fire-breathing, litigating Phoenix has arisen from the ashes. This Court also recognizes that SCKG is one of the leading bankruptcy firms in the Chicago area. As a result, SCKG has enjoyed a prime billing rate, and has had every economic incentive to include within its fee structure compensation for its skill, experience and quality of service. To further enhance SCKG's fees based upon factors contributing to the quality of the legal services rendered would amount to double compensation.

■ In *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*,) the Supreme Court again considered the question of fee enhancements, this time specifically addressing enhancements for the risk of nonpayment. The Court also addressed the issue of enhancement for delay, stating that delay should be compensated either by basing the award on current rates or by adjusting the fee based upon historical rates to reflect its present value. Id. 107 S.Ct. at 3081. Thus, delay is not to be compensated by means of a multiplier-type enhancement.

Risk of nonpayment, the subject of most of the Supreme Court's analysis, gave the Court considerably greater pause. It produced a 4–1–4 decision in which the plurality would virtually foreclose fee enhancement for risk of nonpayment, with Justice O'Connor's swing vote in concurrence not

going quite so far. However, both the plurality and the concurrence agreed that "no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk, the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" Id. 107 S.Ct. at 3091 (quoting Id. at 3089).

In this circuit, even before *Delaware Valley II,* fee enhancement for risk of nonpayment was never favored. See *In Re Burlington Northern, Inc.,* 810 F.2d 601 (7th Cir.1986); *McKinnon v. Berwyn,* 750 F.2d 1383 (7th Cir.1984). Cf. *Kirchoff v. Flynn,* 786 F.2d 320 (7th Cir.1986); *Ohio Sealy Mattress and Manufacturing, Co. v. Sealy, Inc.* 776 F.2d 646 (7th Cir.1985). Furthermore, this district has applied *Delaware Valley II* to refuse fee enhancement for risk of nonpayment, even in exceptional circumstances, unless there is a showing that plaintiff would not have been able to find counsel in the absence of such enhancement. *Shakman v. Democratic Organization of Cook County,* 677 F.Supp. 933 (N.D.Ill.1987).

The 9th Circuit has recently held that the *Delaware Valley II* standards, although developed in the fee-shifting statute context, remain viable in bankruptcy cases. *In Re Manoa Finance Co. Inc.,* 853 F.2d 687 (9th Cir.1988). However, the 9th Circuit cautioned that bankruptcy cases do not involve the same type of risk of nonpayment as do the fee-shifting statutes because bankruptcy counsel's compensation is not contingent upon prevailing as is the case under the fee-shifting statutes. "[T]he risk of nonpayment in bankruptcy cases generally arises only in the event of insufficient funds in the estate to pay for the services rendered." Id. at 691. This type of risk exists with respect to any client who may not have the funds with which to pay his attorney.

■ In view of all of these limitations upon fee enhancement for risk of nonpayment, especially in bankruptcy cases, this Court would require an especially strong showing to justify such enhancement. That showing would have to focus upon the inability to obtain competent counsel in the absence of such fee enhancement. Upon the record of this Application, no such showing has been made as to SCKG or vis-a-vis creditors' counsel. On the contrary, a number of firms vied for the position of counsel to the Chapter 11 Creditors' Committee. After the conversion to Chapter 7 and the denial of the Trustee's motion for approval of SCKG's representation, the Miller, Shakman, Nathan & Hamilton firm was available to represent the Trustee, despite its hesitance in representing certain unsecured creditors in a class action against the Member–Owners. Furthermore, despite the Trustee's anecdote involving his side-bar plea for counsel, which only involved the position of counsel for Trustee, and not creditors' counsel, the Trustee has been able to secure representation by a number of firms, in areas ranging from environmental law to taxation. All these counsel serve without the promise, or the award, of fee enhancement. This is simply not a case where fee enhancement to assure adequate representation is necessary. Thus, based upon the relevant precedents, this Court concludes that enhancement of SCKG's fees, for risk of nonpayment or for any other reason, is not appropriate.

■ This Court, however, has indicated that enhancement for delay in payment is appropriate. As indicated by the Supreme Court in *Delaware Valley II,* such enhancement should be limited to either basing the award on current rates or adjusting the fee to reflect its present value. 107 S.Ct. at 3078. SCKG was allowed fees by order dated August 14, 1985, calculated at 1985 hourly rates. SCKG is thus entitled to enhancement only for the delay since 1985.

Such enhancement should take the form of the award of interest on the unpaid fees calculated at the U.S. Treasury Bill rate. See *Zipes v. Trans World Airlines, Inc.,* 846 F.2d 434 (7th Cir.1988). Cf. *Lippo v. Mobil Oil Corp.,* 692 F.Supp. 826 (N.D.Ill. 1988). Interest at that rate is particularly appropriate in this case because that is the rate being earned on estate funds invested by the Trustee. To compensate counsel for

delay at a higher rate than that earned by the estate would constitute an unnecessary burden on the estate.

## EQUITABLE ALLOCATION

This Court notes that the SCKG petition was supported by both the Trustee and his current counsel. This would seemingly be an acknowledgment of the substantial contribution by SCKG to the Chapter 7 case. The Trustee has employed several counsel in connection with his prosecution of the various matters involved in the pending Chapter 7. In addition thereto, Trustee has been authorized to, and has employed himself as additional counsel. . Various counsel have submitted petitions for interim compensation. Those employments have been authorized under Section 327, under compensation arrangements which had been approved under Section 328. and Section 330. No statements have been filed under Rule 2016 regarding sharing of compensation. This Court must assume, therefore, that no agreements have been made for sharing of compensation. In light of the support for the petition, this Court will reopen the hearings on the prior fee petitions by various counsel for the Trustee for the purpose of allowing those counsel, together with SCKG, to demonstrate to this Court the propriety of the sharing of compensation with SCKG, the period of time against which allocation should be made, (i.e. initial three to six-month post-conversion period or total post-conversion period) and the allocation of a portion of the compensation awarded to counsel for Trustee to SCKG. This Court will allow amended petitions to be submitted together with statements under Rule 2016.

Accordingly,

1) the Motion for Reconsideration of Judge Hertz' September 20, 1984, Order is denied;

2) SCKG is denied any and all compensation for work done for the period beginning with the conversion of this Case to Chapter 7 on May 31, 1984; and

3) SCKG is awarded additional compensation in the nature of interest, calculated by applying a simple interest rate on an annual basis equal to the short-term Treasury Bill rate applicable for each period for which such interest is calculated, for any balance due after the date of the award, August 14, 1985. No payments to SCKG will be made, however, until, and only to the extent that unencumbered assets are available to the estate.

4) Any petition for allocation of compensation shall be filed on or before December 31, 1988. Failure to file any petitions shall constitute a waiver of any claim for allocation.

## SUPPLEMENTAL OPINION ON MOTION TO RECONSIDER AND MOTION TO CLARIFY

On November 10, 1988, this Court issued its Memorandum Opinion and Order, *In re Energy Cooperative, Inc.*, supra, ("Opinion"), relating to the petition for fees by Schwartz, Cooper, Kolb & Gaynor, Chartered ("SCKG"). A Motion to Reconsider has been filed by SCKG and a Motion to Clarify has been filed by Miller, Shakman, Nathan & Hamilton ("MSNH"). In its Motion to Reconsider, SCKG raises seven issues. In its Motion to Clarify, MSNH raises one issue. Each of these issues will be dealt with separately.

The Member Owners object to consideration of the SCKG Motion as untimely under Rule 8002. The original opinion left open the question of whether SCKG could share in compensation awarded to others. It was, therefore, not a final order.

## MOTION TO RECONSIDER

(1). *Correction of Typographical Error.* SCKG asks this Court to modify its order awarding $328,802.21 to SCKG in fees and reimbursement of expenses. SCKG points out that the correct figure should be $378,802.21.

This Court agrees with SCKG and hereby modifies its Opinion to award the amount of $378,802.21 in fees and reimbursement of expenses, due to a typographical error in the original opinion. In making this modification, this Court points

out that the figures upon which the correct award is based are contained in the Court's Opinion so that the Court is in reality making no substantive modification whatsoever. A simple motion under Rule 60(a) and 9024 would have sufficed.

(2). *Cost of Preparing Original Fee Petition.* SCKG requests that, although SCKG's Fee Application filed June 19, 1988 did not separately state the aggregate number of hours expended in preparing the original fee application upon which the August 14, 1985, fees were awarded, costs incurred for preparing the original fee application should be allowed.

This Court agrees that, under the practice in this District, SCKG should be allowed an additional amount for reasonable costs incurred in preparing the original fee application. Based upon the material submitted in the Motion to Reconsider, this Court awards an additional $5,968.00 as such reimbursement.

The Court, however, finds that the great bulk of the time incurred in connection with the current fee application was work performed post-conversion and resulted from the SCKG petition for post-conversion fees which have been disallowed, for which there was no reasonable basis for allowing fees. The Court, therefore, awards no additional amount in connection with the preparation of the fee application filed on June 19, 1988.

(3). *Interest Calculation.* SCKG seeks an award of interest from the date services were rendered rather than from the date of Judge James' August 14, 1985, fee award. This Court has already adequately explained that interest is awarded as an enhancement for delay in payment. That period does not begin to run until the award has been made. This Court, in its Opinion, further explained that such enhancement may be provided either by awarding interest or by allowing compensation to be set at the hourly rates prevailing at the time of the fee application rather than those prevailing at the time services were rendered. The August 14, 1985 award was based upon rates prevailing at that time. Therefore, this Court considers SCKG to have

been adequately compensated for delay in payment to the date of August 14, 1985 and will award further compensation for delay in payment in the form of interest only from that date.

Second, SCKG takes issue with the Court's use of the interest rate earned by the estate on its deposits. The interest award is in the nature of enhancement for delay and as such is not analogous to pre-judgment interest. Furthermore, the Court looks upon such enhancement as designed to prevent unjust enrichment by the estate at the expense of SCKG, rather than as providing additional earnings to SCKG.

SCKG's next point is purely mechanical. It seeks guidance as to how to make the interest calculation. The Court understands that interest rates fluctuate over time. The Court did not mean to imply that such fluctuations should not be taken into account. By awarding simple interest, the Court has ruled that there should be no imposition of interest on interest within a given year. However, interest should be added to principal at the end of each calendar year (or a portion thereof, if an incomplete calendar year is involved) so that the next year's interest calculation will be calculated upon a principal amount which will include both the principal amount plus accrued interest to the close of the prior year.

SCKG has suggested that the 52–week treasury bill rate be used as the applicable interest rate. The interest rate to be applied, the applicable interest rate, should be derived by a formula based on the actual rate earned by the estate on its deposits. If there is a single rate earned by the Trustee on all estate deposits, that would be the rate used. If there are various rates earned by the Trustee on different portions of the estate investments, the Court directs that a weighted average of the various rates be used.

That weighted average would be calculated for each calendar year, or portion thereof, by taking each rate and multiplying it first by a fraction, the numerator of which is the amount of estate investments earning that interest rate and the denominator of which is the total amount of estate

investments, and then by a fraction, the numerator of which is the number of days in the year the investments involved earned the particular rate in question and the denominator of which is the total number of days in the calendar year in which the period involved falls. The sum of each interest rate multiplied by its applicable fractions equals the weighted average rate, or what the Court has referred to as the applicable interest rate.

The Trustee is therefore directed to prepare and file an accounting of rates earned on estate investments for the period of August 14, 1985, through July 31, 1988, within 60 days hereof, to be supplemented annually within 60 days of the end of each calendar year or portion thereof, where applicable, until the fees are fully paid, in sufficient detail to allow for the calculation of SCKG's award in accordance with this Supplemental Opinion.

(4). *Creation of Fund.* SCKG argued in connection with its June 19, 1988 fee application that it was entitled to fees for the period following the conversion of the Energy Cooperative, Inc. ("ECI") case from Chapter 11 to Chapter 7, based upon equitable principles, because it had created a fund for the benefit of the estate. SCKG claims that this Court's findings with regard to that argument, set forth in its Opinion, are not adequate. SCKG insists that it is not rearguing the position it took before this Court in the proceedings leading up to the issuance of the Opinion.

SCKG seemingly ignores the comments in the Court's Opinion to the effect that:

(a) No benefit has, as of yet, been rendered to the estate, so that it is premature to entertain any claims for compensation based upon the creation of any fund benefitting the estate; see supra at 964.

(b) The Bankruptcy Code, by its careful and intricate provisions relating to fee awards, has displaced any pre-Code grounds for awarding fees in equity based upon the creation of a fund. The Code has as much as stated that counsel for a Chapter 11 Creditors' Committee loses its right to compensation upon conversion to Chapter 7, regardless of any benefit such counsel may have rendered to the estate, whether in the creation of a fund or otherwise. Section 503(b)(3)(D) governs compensation for substantial contributions to the estate and it only applies to Chapters 9 or 11, *not* Chapter 7. It is, therefore, rendered inapplicable upon conversion. The Court notes that the cases cited by SCKG in support of its fund creation argument are pre-Code cases; see supra at 964, and

(c) Even if SCKG had rendered a benefit to ECI's estate by creating a fund, that benefit was rendered in connection with services it performed as Creditors' Committee counsel in the Chapter 11 phase of the case. SCKG was already awarded compensation for those services. Therefore, it has little, if any, equitable claim to further compensation for performing those very same services. See supra at 964.

To reiterate, for clarity, (a) SCKG has not shown the creation of any fund; and (b) such position ignores the substantial work performed by MSNH, counsel for the Trustee, the success and credit for which MSNH has claimed for itself rather than crediting SCKG or any "fund".

Accordingly, this Court once again denies SCKG's request for the Court's exercise of its equitable powers in awarding further compensation based upon benefits to the estate in the form of creation of a fund.

(5). *Pre–September 24, 1984 Services.* SCKG renews its request for compensation from the period beginning May 31, 1984, the date of the conversion, to September 24, 1984, the date of Judge Hertz' order denying SCKG's appointment as counsel to the Trustee. The Court notes SCKG's disclaimer of any intent to reargue the question of compensation for that period and its stated intent to merely clarify the dollar amount of compensation sought for that period for purposes of appeal. This Court reiterates its holding that no compensation is allowable in connection with any services

performed for the post-conversion period beginning on May 31, 1984.

(6). *Fee Enhancement.* SCKG seeks clarification regarding this Court's denial of fee enhancement. SCKG wishes this Court to clarify whether this Court held that such enhancement is never available, as a matter of law.

This Court cites SCKG to page ten of its Opinion, supra at 965. In that discussion, this Court cited *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986) (*"Delaware Valley I"*) to the effect that certain factors which, prior to *Delaware Valley I,* served as a basis for enhancement of the lodestar, are presumably fully reflected in the lodestar amount. This Court commented that "[a]lthough the Supreme Court has not absolutely ruled out such enhancement, it has indicated that it is to be granted only in rare and exceptional cases. This Case is not such a rare and exceptional case." The Court was not ruling out enhancement as a matter of law. The Court found, as a matter of fact, that an adequate showing upon which such enhancement could be based was not made by SCKG in this case.

This Court also clarifies, for SCKG's benefit, its reliance on *In re Manoa Finance Co., Inc.,* 853 F.2d 687 (9th Cir.1988) (*"Manoa"*). This Court cited *Manoa* for the following propositions: (a) The standards of *Delaware Valley I* and *Pennsylvania v. Delaware Valley Citizens' Council,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (*"Delaware Valley II"*) apply in bankruptcy cases; and (b) The risk of non-payment in bankruptcy cases is different than it is in fee-shifting cases, justifying less in the way of enhancement for risk of non-payment than is the case under fee-shifting statutes. This Court notes, in response to SCKG's exegesis of *Manoa,* that the discussion of fee enhancement in *Manoa* alluded to by SCKG is based upon *Delaware Valley I.* As such, *Manoa's* use, as a standard for enhancement, that which "will be necessary to make the amount of compensation reasonable and commensurate with the rate for comparable non-bank-ruptcy services", 853 F.2d at 691, is directed to enhancement of the lodestar for the factors dealt with in *Delaware Valley I.* It is not directed to enhancement for risk of non-payment, the subject of *Delaware Valley II.*

This Court has found that SCKG has not made an adequate showing of grounds for fee enhancement based upon either *Delaware Valley I or II* factors.

(7). *Motion to Reconsider Judge Hertz's Order.* In its Opinion, this Court denied the Trustee's Motion to Reconsider Judge Hertz' Order of September 24, 1984 ("Hertz Order"). The Hertz Order denied SCKG's Application for appointment as Trustee's counsel. The Trustee moved for reconsideration of the Hertz Order in connection with the proceedings on SCKG's June 19, 1988 fee application.

SCKG now argues that this Court's level of deference to the Hertz Order is too high. Next, SCKG argues that, contrary to the Court's Opinion, overturning the Hertz Order would not amount to a *nunc pro tunc* authorization for SCKG's post-conversion work. Finally, SCKG reargues the merits of the Hertz Order.

This Court does not presume to characterize the holdings in the cases cited in the Opinion, regarding the deference owed to decisions of coordinate judges, as mere casual remarks, as does SCKG. This Court takes those cases seriously and also takes the Hertz Order seriously. Therefore, although this Court would overturn the Hertz Order if a strong enough showing were made, this Court will not do so absent such a strong showing.

SCKG's comments equating reconsideration for the typographical error to be corrected with reconsideration of the Hertz order, a comparison made by SCKG on page 12 of its Motion to Reconsider, is specious and requires no further comment.

This Court also reiterates that, for any services rendered after September 24, 1984, SCKG rendered those services in the face of an order specifically denying its appointment as Trustee's counsel. A *nunc pro nunc* authorization deals with services which have been rendered without specific

authorization by a court. Services that are rendered in contumacious contemplation of payment in the face of a specific contrary ruling by a court are even less deserving of court approval.

With regard to services rendered between May 31, 1984 and September 24, 1984, SCKG rendered such services simply without court authorization. That is a classic *nunc pro tunc* situation, for which SCKG is seeking authorization four years later. Although SCKG resists characterization of such delay as laches, this Court nevertheless remains negatively impressed by such long delay, and the settled expectations which have intervened during the period of that delay.

This Court will therefore continue to deny the Trustee's Motion to Reconsider the Hertz Order.

### MOTION TO CLARIFY

MSNH asks this Court to advise as to whether it will entertain a new fee petition to be presented by MSNH for the payment of *additional* compensation to MSNH which compensation would be paid over to SCKG in lieu of the fees prayed for in the SCKG petition. MSNH asserts that it could not clearly ascertain from the Opinion that the Court's consideration of sharing of compensation referred solely to a sharing and redistribution of fee awards already made to the professionals so as to include SCKG.

The Opinion referred specifically to reopening the hearings on the *prior* fee petitions by various counsel for the Trustee. The Opinion further referred specifically to the question of the propriety of *sharing* of compensation with SCKG, not the award of *additional* compensation. The contrary statements by MSNH strain the bounds of credulity. This Court clearly raised the question of the propriety of sharing but limited that consideration to amounts previously awarded, and those references to the sharing of compensation were limited to a redistribution of compensation already awarded.

This Court reasoned that if SCKG rendered any benefit to the ECI estate by the performance of the services for which it seeks compensation, that benefit would have necessarily been in discharge of the duties to be performed by counsel to the Trustee. It would then follow that MSNH's services, as counsel to the Trustee, for which it has been amply compensated, were only of a professional quality due to the guidance and assistance of SCKG. Conspicuously absent from the hearings on SCKG's June 19, 1988 application was any testimony by either MSNH or the Trustee to the effect that SCKG did anything that could not have been done just as well by either MSNH, or that MSNH or other counsel were incapable of competent performance of their duties absent SCKG's direction, leadership and guidance.

This Court reads MSNH's Motion to Clarify as reinforcing that conclusion. MSNH states that the services for which it has been compensated have been rendered by MSNH. MSNH neither needed nor received any direct benefit from SCKG in rendering those services. The services for which SCKG is seeking compensation would then be over and above the services rendered by MSNH and apart from any benefit rendered to anyone else in the course of performing authorized services for the ECI estate. This Court, therefore, looks upon the MSNH Motion to Clarify as additional grounds for denying SCKG's June 19, 1988 application.

The suggestion by MSNH that the Opinion left open the possibility that this Court would entertain such a subterfuge is somewhat disingenuous.

It is further ordered that no fees payable from the ECI estate will be awarded to MSNH for any time or expenses in connection with MSNH's Motion to Clarify; no such time or expense shall be included in any future fee petition submitted by MSNH.