## In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

### Bankruptcy No. 88–43.

United States Bankruptcy Court, D. New Hampshire.

Feb. 21, 1992.

John B. Nolan, Steven M. Greenspan, Jeffrey G. Grody, Hartford, Conn., for Public Service Co. and Northeast Utilities.

Geoffrey M. Kalmus, New York City, for Kramer, Levin, Nessen, Kamin & Frankel.

Howard J. Berman, New York City, for Whitman and Ransom.

Frederick J. Coolbroth, Manchester, N.H., for the State of N.H.

Terry L. Gibson, for the U.S. Trustee.

Kevin J. Burke, New York City, for Cahill, Gordon & Reindel.

Connie L. Rakowsky, Concord, N.H., for New England Elec. Systems.

## MEMORANDUM OPINION AND ORDER

JAMES E. YACOS, Bankruptcy Judge.

The issue for determination is the legal and factual propriety of awarding reorganization professionals an enhancement for delayed compensation.

Kramer, Levin, Nessen, Kamin & Frankel ("Kramer, Levin"), counsel to the official committee of unsecured creditors; Whitman & Ransom, counsel to the official committee of equity security holders; and Cahill, Gordon & Reindel ("Cahill, Gordon"), special counsel to the debtor (hereinafter collectively the "applicants"), all seek "interest" on fees requested but not allowed by prior interim fee allowance orders. This difference is frequently referred to by fee applicants as a "holdback." The amounts involved are: $483,609 for Cahill, Gordon; $625,171 for Kramer, Levin; and $713,585 for Whitman & Ransom. The "interest" requested on these amounts by the appli-

cants through September 30, 1991, is: $33,-362.87 for Cahill, Gordon; $98,161.00 for Kramer, Levin; and $87,418.13 for Whitman & Ransom.

The debtor commenced this case on January 28, 1988. This Court confirmed debtor's plan of reorganization on April 20, 1990. The Court entered its final fee award on the undisputed amounts of applicants' requests in this case on October 17, 1991.

The United States Trustee has objected to the award of interest on holdbacks and contends what the applicants are really seeking is a fee enhancement. The applicants have responded that they are not seeking a fee enhancement, as in fact other professionals in this case are, but rather are merely looking to be made "whole" for the opportunity and carrying costs caused by the delay in receiving compensation.[1]

The Court heard argument by both sides at the January 8, 1992, hearing and, for the reasons discussed below, finds the fee amounts requested are reasonable and approves the applications as requested.

## DISCUSSION

■ At the outset it should be noted that this Court does not make interim fee *awards*; the Court makes interim fee *allowances* to applicants in extended and complex bankruptcy proceedings such as this one. Interim allowances are intended to alleviate hardship to the professionals involved in lengthy reorganizations. Any such interim allowances are then credited at the conclusion of the case when the Court does enter final fee awards. The final fee awards are determined only upon conclusion of the case when the Court can review the entire history of the case, the results obtained from the rendition of the professional services, and all other relevant factors bearing on the propriety of the final fee requests.

1. In its original fee application, Cahill, Gordon did request a premium of $250,000 which was subsequently withdrawn. Other fee applicants, including the examiner, the financial advisor to the Official Committee of Equity Security Holders, and counsel for the debtor in possession are seeking premium compensation ranging from $200,000 to $3.1 million.

■ Based on the foregoing, it is clear that no fees were "due and owing" until this Court entered its order awarding final fees. As there was no legal entitlement to payment prior to the final fee award dated October 17, 1991, any claim to "interest" on amounts not allowed by interim fee orders is, legally speaking, groundless. At best, any claim for interest for delay in receiving "due and owing" fee compensation can be traced back only to October 17, 1991. What these applicants are really seeking is an enhancement to compensate them for the delay in receiving payment for services billed but not received from the first interim compensation period forward.

■ The Supreme Court discussed the issue of a fee enhancement for delay in receiving compensation in dicta in *Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The issue before the Supreme Court was the risk of non-payment under fee-shifting statutes, but the Court digressed on the issue of delay:

> First is the matter of delay. When plaintiff's entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later, as in this case. Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. See *e.g., Sierra Club v. EPA*, 248 U.S.App.D.C. 107, 120–121, 769 F.2d 796, 809–810 (1985); *Louisville Black Police Officers Organization, Inc. v. Louisville*, 700 F.2d 268, 276, 281 (CA6 1983). Although delay and the risk of nonpayment are often mentioned in the same breath, adjusting for the former is a distinct issue that is not involved in this case. We do not suggest, however, that adjustments for delay are inconsistent with the typical fee-shifting statute.

The Court repeated the availability of an enhancement for delayed compensation in *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), a civil rights case in which plaintiffs' attorneys sought an enhancement for delay under 42 U.S.C. § 1988:

> Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.

*Id.* at 283–84, 109 S.Ct. at 2469 (footnote omitted).

I preliminarily considered this very issue in this case almost four years ago and stated at that time:

> There is also the possibility that "delay in payment" may be a compensating enhancement factor in final fee awards in this Circuit upon an appropriate showing. *See In re Boston and Maine Corporation*, 776 F.2d 2, 7 (1st Cir.1985).

*In re PSNH*, 93 B.R. 823, 833 (Bankr. D.N.H.1988); *see also In re D.W.G.K. Restaurants*, 106 B.R. 194 (Bankr.S.D.Cal. 1989); *In re Energy Co-Op, Inc.*, 95 B.R. 961 (Bankr.N.D.Ill.1988).

In *D.W.G.K., supra,* the court awarded debtor's attorneys interest on fees previously awarded but unpaid. In making this determination, the court noted the attorneys in the case had deferred paying themselves so that the secured creditors could be timely paid, "thereby preserving major assets of the estate." *Id.* at 198. The court determined the amount of interest by using the interest rate applied to judgments obtained in United States Courts "as affected by the provisions of 28 U.S.C. § 258e–1 and calculated by the manner described therein." *Id.*

The court in *In re Energy Co–Op, Inc., supra,* also awarded an enhancement for delay in compensation, but allowed the enhancement only from entry of the order

awarding final fees at the conclusion of the case. The court set the interest rate at the U.S. Treasury Bill rate for the reason that that was the rate being earned on estate funds and to compensate the attorneys at any rate higher would be an unwarranted burden on the estate. *Energy Co–Op, Inc.*, 95 B.R. at 966–67.

In opposing the applicants' requests, the United States Trustee has cited *In re Boston and Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985), in support of his argument that the Code does not specifically authorize the awarding of interest on amounts held back and that bankruptcy courts have generally not granted such awards. While it is true that the First Circuit upheld the denial of a requested enhancement for delay in *Boston and Maine*, the Court did acknowledge that the power to make such an award was within the district court's discretion. "This lodestar can then be adjusted up or down to reflect a variety of factors, such as delay in payment, quality of representation, and the results obtained if they have not already been taken into account in computing the lodestar." *Id.* at 7 (citations omitted). Further, *Boston and Maine* was decided before the Supreme Court's *Missouri v. Jenkins* decision which recognized that an adjustment to the lodestar for delay in payment may be appropriate in complex and protracted civil litigation.

The United States Trustee has also cited *In re Apex Oil Co.*, 111 B.R. 235, 244 (Bankr.E.D.Mo.1990), a case in which the court granted an examiner's request for a 15 percent fee enhancement but denied the examiner's request for interest on delayed fee compensation. In denying the examiner's request for interest, the court noted that the examiner was subject to only a 15 percent fee holdback and received the remaining 85 percent of his fees on a monthly basis. The *Apex Oil* court concluded that the amount and frequency of the interim awards more than compensated the examiner for any cost associated with delay. *Id.* at 244.

The applicants in this reorganization originally received 100 percent of their fee requests which was later reduced to 75 percent of their interim requests on a quarterly basis. The applicants argue that they carried "receivables" ranging from $483,609 to $713,585, from the time of the interim orders to the final fee awards, with "interest" ranging from $33,362 to $98,161 on these amounts. Notwithstanding the United States Trustee's argument that these applicants have already received multi-million dollar fee awards such that the cost of carrying the amounts involved is negligible in relative terms, nonetheless these are substantial sums of money which the applicants have had to carry at a time-valued cost. The Court does not believe the applicants should bear the economic burden for the delay inherent in the reorganization process. This was a complex and prolonged reorganization and the amounts withheld date back to May, 1989.

Lastly, the Court is reassured in reaching this result by the fact that neither Northeast Utilities, the acquiror of PSNH which will ultimately bear the cost of these awards, nor the State of New Hampshire, which acts on the behalf of New Hampshire electric utility ratepayers, has seen fit to object to applicants' requests.

### CONCLUSION

For these reasons, and the matter being within its discretion, and finding the amounts requested are reasonable, and warranted on all of the facts of this successful reorganization, the Court awards the applicants the enhancements as requested.

DONE and ORDERED.