MAGILL, Circuit Judge.
Lloyd Palans[1] appeals the order of the district court overturning a fee enhancement granted to him by the bankruptcy court for his services as a bankruptcy examiner. Palans argues that the district court erroneously overturned his fee enhancement because the bankruptcy court did not abuse its discretion by granting the enhancement. We affirm in part, reverse in part, and remand.[2]
I.
On January 27, 1988, the bankruptcy court appointed Palans as examiner in the bankruptcy proceedings of Apex Oil Company. In his role as examiner, Palans was to act as a disinterested participant who could assist in resolving the many conflicting interests in the reorganization process. Although Palans played a pivotal role in every significant phase of the Apex bankruptcy proceedings, we reiterate here- only his most impressive contributions.[3] In terms of stabilizing the estate and making its ongoing operations more viable, Palans made two indispensable contributions. First, he engineered a settlement among Apex, the Clark Oil Trading Company, and the secured creditors. Through this settlement, Apex avoided expensive, time-consuming litigation that could have destroyed any chance of a reorganization. Second, Palans designed and implemented a claims resolution procedure for handling hundreds of personal injury lawsuits against Apex. This procedure alleviated a potentially substantial drain on Apex’s resources. In terms of disposing of assets, Palans was instrumental in obtaining court approval of an asset sale that presented Apex with the opportunity to satisfy secured creditors at a significant discount, preserve value for unsecured creditors, and create a basis for Apex to reorganize. Finally, Palans undertook the more traditional role of investigating the debtor’s affairs. His resulting report on possible causes of action against Apex insiders had a substantial impact on the funds available to creditors. It is undisputed that these achievements were indispensable in bringing the Apex bankruptcy proceedings to a just, prompt, and economic disposition.
During his tenure as examiner, Palans billed the estate on a monthly basis for the hours he worked. On average, the hourly rate he charged was $116.82. Pursuant to a court order, Palans was paid 85% of his legal fees on a monthly basis. When Pa-lans’ duties as examiner were virtually completed, Palans asked the bankruptcy court to approve payment of the additional 15% of the billed fees, for a total payment of $1,272,137.52 in billed fees. In addition, Palans sought a bonus of $170,106.30, equal to 15% of the total billed fees. Although no one objected to payment of 100% of the billed fees, certain interested parties did object to the 15% enhancement. These parties argued that Palans’ fees should be limited to the number of hours reasonably expended multiplied by a reasonable hourly *731 rate, commonly known as the lodestar amount, and that the $1,272,137.52 in billed fees was the lodestar amount here. Following a hearing, the bankruptcy court decided to grant Palans the enhancement based on the rare and exceptional quality of his service and the results obtained. In support of its decision, the bankruptcy court set out fifty-two findings of fact detailing Palans’ role in the bankruptcy proceedings. See In re Apex Oil Co., 111 B.R. at 237-43.
Apex and other interested parties appealed the bankruptcy court’s decision to the district court which overturned the $170,-106.30 enhancement. The district court found that the bankruptcy court abused its discretion by granting the enhancement because it applied the wrong legal standard. The district court did agree that enhancements above the lodestar amount are proper in rare and exceptional circumstances. The court found, however, that the quality of representation and results obtained, by themselves, can never constitute rare and exceptional circumstances because these factors are presumptively reflected in either the number of hours billed or the hourly rate. The district court further found that exceptional service and results “may justify enhancement only in the rare case where specific evidence is offered to show that the lodestar amount failed to adequately compensate the examiner for the services provided, and the enhancement is necessary to make the award commensurate with compensation for comparable non-bankruptcy services.” Apex Oil Co. v. Palans (In re Apex Oil Co.), 132 B.R. 613, 615 (E.D.Mo.1991) (citation omitted). Applying this legal standard, the district court found that Palans was entitled to only a $45,288 enhancement. The court based its decision on evidence that Palans had billed his time at $20 less per hour than his standard hourly rate in non-bankruptcy matters.[4]
Palans appeals the district court’s decision. He requests this court to either reinstate the bankruptcy court’s order or remand to the bankruptcy court with instructions to make further findings under the correct legal standard. We conclude that the latter option is the appropriate course.
II.
Because the district court was acting as an appellate court, we review the district court’s factual and legal conclusions de novo. Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir.1987). In essence, this court’s role is to “conduct an independent review of the bankruptcy court’s judgment, asking whether [its] legal conclusions are correct and whether its factual findings are clearly erroneous.” Id. If we conclude that the bankruptcy court’s findings are silent or ambiguous as to an outcome determinative factual question, we may not make our own findings but must remand the case to the bankruptcy court for the necessary factual determination. Id. Our review focuses on whether the bankruptcy court applied the correct legal standard for fee enhancement.
Compensation of certain professionals in bankruptcy matters, including examiners, is governed by 11 U.S.C. § 330(a) which allows the court to award:
(1) reasonable compensation for actual, necessary services ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title....
11 U.S.C. § 330(a) (1988). In determining what constitutes “reasonable compensation” under this section, most courts have adopted the formula used to calculate fees under various federal fee-shifting statutes. In re Manoa Fin. Co., 853 F.2d 687, 690 (9th Cir.1988). Compensation under these statutes is based on the lodestar amount which, as noted above, is the number of hours reasonably expended multiplied by a reasonable hourly rate. Because this lodestar amount presumably reflects (1) the novelty and complexity of the issues, (2) *732 the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained, these factors normally cannot serve as independent bases for increasing the fee award above the lodestar amount. See, e.g., Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986) (Delaware I); Blum v. Stenson, 465 U.S. 886, 898-900, 104 S.Ct. 1541, 1548-1550, 79 L.Ed.2d 891 (1984). The Supreme Court, however, has stated that upward adjustments of the lodestar figure are permissible “in certain ‘rare’ and ‘exceptional’ cases, supported by both ‘specific evidence’ on the record and detailed findings by the lower courts.” Delaware I, 478 U.S. at 565, 106 S.Ct. at 3098. We find that the lodestar approach, including the possibility of adjustments in rare and exceptional circumstances, is an appropriate method to use in calculating reasonable compensation under § 330. See In re Manoa Fin. Co., 853 F.2d at 691. The more difficult question is what the fee applicant must show to establish that rare and exceptional circumstances exist. We do not attempt a comprehensive answer to this question. Rather, our focus in this case is on whether and when the quality of representation or the results obtained can constitute a basis for fee enhancement.
We conclude that these factors can justify a fee enhancement.[5] Because the lodestar amount may already compensate the applicant for exceptionally good, service and results, however, the fee applicant must do more than establish outstanding service and results. The applicant also must establish that the quality of service rendered and the results obtained were superior to what one reasonably should expect in light of the hourly rates charged and the number of hours expended. See Blum, 465 U.S. at 899, 104 S.Ct. at 1549; see also Copeland v. Marshall, 641 F.2d 880, 893-94 (D.C.Cir.1980) (“A quality adjustment is appropriate only when the representation is unusually good or bad, taking into account the level of skill normally expected of an attorney commanding the hourly rate used to compute the ‘lodestar.’ ” (emphasis in original)); In re Energy Co-op, 95 B.R. 961, 965 (Bankr.N.D.Ill.1988) (denying enhancement because high quality of legal services already reflected in prime billing rate).
Applying this standard to the bankruptcy court’s decision to enhance Pa-lans’ fees, we find no clear error in the bankruptcy court’s conclusion that Palans’ service was of exceptionally good quality and that this service brought exceptionally good results. In fact, appellees do not even challenge the bankruptcy court’s specific findings of fact. The bankruptcy court, however, did not address how Pa-lans’ service and the results he obtained relate to the service and results reasonably expected of an attorney commanding Pa-lans’ hourly rate and expending an equivalent number of hours. Accordingly, we remand to the bankruptcy court for further findings on this issue. In addressing this issue, the bankruptcy court can properly consider Palans’ extensive comparison of his fees with the fees charged by other attorneys in the Apex bankruptcy proceedings. If the court concludes that Palans’ lodestar fee did not reasonably compensate him for his service, in light of its exceptional quality and the results obtained, an enhancement is appropriate.
The bankruptcy court need not find that an enhancement is necessary to make the award commensurate with compensation for comparable, non-bankruptcy services before it can enhance Palans’ fee. We reject the district court’s contrary holding. To require the bankruptcy court to identify specific non-bankruptcy services that are comparable to the services performed by the fee applicant, and then to determine whether the rate of compensation for these services is equal to or greater than the lodestar amount, would create an evidentiary nightmare. We do not believe that § 330 contains such a require *733 ment. Section 330 provides that “the cost of comparable services” in non-bankruptcy cases is one of a number of factors to consider in calculating “reasonable compensation.” As § 330’s legislative history makes clear, Congress intended this provision to ensure that bankruptcy courts do not compensate bankruptcy attorneys at a rate below the cost of comparable, non-bankruptcy services in order to conserve the bankruptcy estate. See H.R.Rep. No. 595, 95th Cong., 2d Sess. 329-30, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6286 (this provision encourages competent attorneys to practice in the bankruptcy field by overruling a line of cases that required fees to be based on notions of estate conservation). In addition, this provision prohibits bankruptcy courts from compensating bankruptcy attorneys in an amount far in excess of the cost of comparable, non-bankruptcy services. Thus, whether the court is determining a reasonable hourly rate for purposes of the lodestar calculation or contemplating an enhancement, the cost of comparable, non-bankruptcy services is a factor relevant to defining the parameters of reasonable compensation. There is nothing in either the plain language or legislative history of this provision, however, that requires a bankruptcy court to identify specific non-bankruptcy services that are comparable to the service at issue before deciding whether a given fee, with or without an enhancement, is “reasonable.”
III.
In conclusion, we affirm that portion of the district court’s order overturning the bankruptcy court’s $170,106.30 enhancement, reverse that portion of the order substituting a $45,288 enhancement, and remand to the district court with directions to remand to the bankruptcy court for further findings consistent with this opinion.

. Unless otherwise noted, the references to Pa-lans in this opinion include both Palans and the law firm of Gallop, Johnson & Neuman, where he was employed.

. We also deny appellees' motion to strike a page in appellants' reply brief.

.For a more thorough discussion of these achievements, along with Palans’ other contributions, we refer to the bankruptcy court’s opinion, In re Apex Oil Co., Ill B.R. 235 (Bankr. E.D.Mo.1990).

. The district court based its enhancement only on the hours Palans personally billed, and not on the hours the entire firm billed.

. Arguably, the quality of representation and results obtained are a single factor rather than two separate factors because the quality of representation is often measured by the results achieved.