**In re LIFSCHULTZ FAST FREIGHT, INC., Debtor(s).**

**Bankruptcy No. 90 B 21673.**

United States Bankruptcy Court, N.D. Illinois, E.D.

May 29, 1992.

See also 127 B.R. 418.

David A. Mucklow, Erica Crohn Minchella, Chicago, Ill., for debtor corp.

Deborah L. Thorne, John H. Ward, Much, Shelist, Freed, Denenberg, Ament & Eiger, Chicago, Ill., for Creditors Committee.

Richard E. Friedman, Dept. of Justice, Chicago, Ill., for U.S. Trustee.

Jack Rimland, Local Counsel for Clark Arrington, Chicago, Ill., Paula Jacobi,

Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for ESOP Group Committee.

Warren Greher, Feinman, Greher & Kave, Newburg, N.Y., for debtors N.Y. Counsel.

Bruce E. de'Medici, Rodriequez & Villalobos, Chicago, Ill., Harold M. Jaffe, Lincolnwood, Ill., Bankruptcy Trustee.

Richard Smolev, Marc Kieselstein, Sachnoff & Weaver, Ltd., Chicago, Ill., for Ambassador Factors Div. of Fleet Factor.

Benjamin D. Schwartz, Marilyn Cherry, Altheimer & Gray, Chicago, Ill., for Carmichael Leasing.

James E. Newbold, Illinois Attorney General's Office, Revenue Litigation Div., Chicago, Ill., for Ill. Dept. of Revenue.

IRS Dist. Counsel, Chicago, Ill., for Internal Revenue.

Cyriac Kappil, Chicago, Ill., for Salson Exp. Co.

Theodore Cohen, Garden City Park, N.Y., Peter A. Soloman, Saugus, Cal., Kevin J. Carey, Hepburn, Willcox, Hamilton & Putnam, Philadelphia, Pa., David Lifschultz, Lifschultz Fast Freight, Inc., New York City, for Company President.

## MEMORANDUM OPINION

RONALD S. BARLIANT, Bankruptcy Judge.

The law firm of Much Shelist Freed Denenberg & Ament, P.C., has moved for the allowance of final compensation for services rendered and reimbursement of expenses incurred on behalf of the Chapter 11 committee of unsecured creditors. The committee also seeks authorization to compensate its accountants, Coopers & Lybrand.

The trustee has objected to both motions. The trustee's principal argument is that the work performed by the applicants did not result in a monetary benefit to the estate. The Court holds that the cost of services performed by professionals on behalf of an unsecured creditors committee may be paid by the estate even if those services do not result in a monetary benefit to the estate. The trustee's objections are therefore overruled. Having independently reviewed the fee motions, the Court allows Much, Shelist an additional $19,742 as compensation and $6,392.71 as reimbursement of expenses, and Coopers & Lybrand $16,175.00 as compensation and $391.05 as reimbursement of expenses. These amounts are in addition to the allowances made December 26, 1991.

## BACKGROUND

On November 20, 1990 an involuntary petition under Chapter 11 of the United States Bankruptcy Code was filed against the debtor, Lifschultz Fast Freight, Inc. On December 13, 1990, the Court entered an order for relief under Chapter 11. Later, the Court ordered the appointment of a Chapter 11 trustee. On December 27, 1990, the United States Trustee formed the committee of unsecured creditors. The Court authorized the committee to hire Much, Shelist as its attorneys and Coopers & Lybrand as its accountants.

The case was converted to a case under Chapter 7 on May 17, 1991, and Mr. Bruce E. de'Medici, who had been the Chapter 11 trustee, became the Chapter 7 trustee. Much, Shelist seeks $43,607.00 in compensation and $6,392.71 for reimbursement of expenses for work done between December 24, 1990 and August 15, 1991. Coopers & Lybrand seeks $32,351.50 in compensation and $391.05 for reimbursement of expenses for work done between January 3, 1991 and May 2, 1991.

The trustee objects to both petitions. The trustee argues that work done in preparation of a plan and disclosure statement did not benefit the estate. The parties allegedly knew that the trustee would probably move to convert the case, and the plan and disclosure statement were filed only two days before the hearing on the trustee's motion for conversion. The case was converted and the committee's plan became moot. The trustee also argues that the four hours spent by Much, Shelist to draft an objection to the appointment of the trustee did not benefit the estate.

Much, Shelist claims compensation of $8,121.00 for preparation of a plan and

disclosure statement, and $640.00 for the objection to the appointment of the trustee. Coopers & Lybrand requests $511.00 for services rendered in connection with the plan and disclosure statement.

On December 26, 1991, the Court issued an order allowing one-half of the fee amounts sought by Much, Shelist and Coopers & Lybrand, and taking under advisement the remaining fees and reimbursement of expenses sought by the applicants. The Court must now rule on the remaining amounts requested: for Much, Shelist, $21,803.50 in fees, and $6,392.71 in expenses; for Coopers & Lybrand, $16,175,00 in fees, and $391.05 in expenses.

## STANDARDS FOR REVIEW OF FEE APPLICATIONS

■ In reviewing fee applications, the bankruptcy court must address three issues: were the services that are the subject of the application properly compensable; if so, were they actual and necessary; if so, how will they be valued? *In re Wildman,* 72 B.R. 700, 704 (Bkrtcy.N.D.Ill. 1987).

### *Properly Compensable*

■ The court must first determine whether legal services performed by the applicant are properly compensable. In certain circumstances, an attorney may not be awarded any fees at all. For example, an attorney whose appointment has not been approved by the court may not receive any compensation from the estate. Also, an application for attorney fees may be denied or reduced where the attorney has a

conflict of interest. *In re Wildman,* 72 B.R. 700, 706 (Bkrtcy.N.D.Ill.1987).

■ Section 1103(a) of the Bankruptcy Code authorizes an unsecured creditors committee to employ attorneys and accountants with prior court approval. Section 330(a) provides that the court may allow those attorneys and professionals reasonable compensation and reimbursement of actual, necessary expenses.[1] Section 503(b)(2) allows the compensation and reimbursement to be paid by the estate as administrative expenses, with priority over the general unsecured claims. 11 U.S.C. §§ 503(b)(2), 507(a)(1) and 726(a)(1). Bankruptcy Rule 2016 requires the party seeking compensation to file a fee application with the court.

The committee properly employed Much, Shelist and Coopers & Lybrand under section 1103(a) and filed appropriate applications under Code section 330 and Bankruptcy Rule 2016. Therefore, their services are properly compensable. *Wildman,* 72 B.R. 700, 706 (Bkrtcy.N.D.Ill.1987).

### *Actual and Necessary*

■ Section 330(a)(1) of the Bankruptcy Code allows compensation for only actual, necessary services. Services necessary under section 330 are those services that aid the professional's client in fulfilling its duties under the Code. In the case of an unsecured creditors committee, necessary services are those rendered to the committee in connection with the committee's performance of its functions under 11 U.S.C. § 1103(c). *In re Pettibone Corp.,* 74 B.R. 293, 308 (Bkrtcy.N.D.Ill.1987).[2]

---

1. Section 330(a)(1) provides:
   (a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, a court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—
   (1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any paraprofessional persons employed by such trustee, professional person, or attorney, as the case may be, based on the nature, the extent, and the value of such services, the time spent on such services, and

the cost of comparable services other than in a case under this title. . . .

2. Section 1103(c) provides:
   A committee appointed under section 1102 of this title may—
   (1) consult with the trustee or debtor in possession concerning the administration of the case;
   (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the cases or to the formulation of a plan;

The trustee argues, however, that in order to be compensable, the work done must also benefit the estate. He cites *In re Continental Illinois Securities litigation,* 572 F.Supp. 931 (N.D.Ill.1983).[3] In *Continental,* which was a class action, the court held that, in order to be compensable legal work must have benefited the class represented by the lawyers seeking fees. 572 F.Supp. at 934. However, as Much, Shelist correctly points out, *Continental* only stands for the proposition that services rendered on behalf of a plaintiff class must benefit the class represented by the professional. *Continental* is not inconsistent with the central holding here—a professional is entitled to compensation for services that benefited the professional's client.

Nevertheless, other courts have held that work done by attorneys must have benefited the *estate* (not only the client) in order to be compensable.[4] These courts have relied upon *In re Ryan,* 82 B.R. 929 (N.D.Ill.1987). In *Ryan,* the court held that section 330 did not allow a debtor's attorney to be paid from the estate for defending the debtor against complaints to determine the dischargeability of debts because these services did not benefit the estate. 82 B.R. at 933.

In *Ryan,* the attorney was representing a Chapter 7 debtor. A Chapter 7 debtor's duties in bankruptcy are set out in section 521 of the Code. These duties are all related to the administration of the estate and the case. A Chapter 7 debtor has no duty to defend complaints to determine dischargeability. In Chapter 7, the dischargeability of debts is distinct from the administration of the case. Whether or not a particular debt is discharged does not affect how a case is administered. A complaint to determine dischargeability is not related to the administration of the estate, but only to the debtor's liability. The cost of defending such a complaint is, therefore, not compensable by the estate under the Code.

The holding in *Ryan* that "attorneys may recover fees from the estate only if their labors actually benefited the estate" ·(82 B.R. at 932) does not require that the benefit to the estate be a monetary benefit. As the *Ryan* court notes, under the former Bankruptcy Act (replaced by the Code in 1978), courts held that work by a debtor's attorney must have benefited the estate to be compensable. 82 B.R. at 932. But, under the Act, services were of "benefit to the estate" if they aided the administration of the estate. Monetary benefit was not required, although monetary benefit was an independent basis for allowing compensation. 2 Collier § 330.04 at 330–28 (15th Ed.)

In *In re Rothman,* 85 F.2d 51 (2nd Cir. 1936), the opinion that the *Ryan* Court describes as the leading authority under the Act (82 B.R. at 932), the Court dealt with the issue of compensation of the debtor's counsel. The *Rothman* Court interpreted section 330's predecessor statute, § 64(b)(3) of the Act, to mean that services within § 64(b)(3), and thus deserving compensation, are both those that result in direct monetary benefit to the estate, and also "those which are reasonably necessary to enable the bankrupt to perform his duties under the act." 85 F.2d at 53, citing *In re Evenod Perfumer, Inc.,* 67 F.2d 878,

---

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

    (4) request the appointment of a trustee or examiner under section 1104 of this title; and

    (5) perform such other services as are in the interest of those represented.

**3.** This holding may have been affected by *In re Continental Illinois Securities Litigation,* 962 F.2d 566 (7th Cir.1992), which reversed *In re*

*Continental Illinois Securities Litigation,* 750 F.Supp. 868 (N.D.Ill.1990).

**4.** See *In re NTG Industries,* 1991 Bankr. Lexis 157, 1991 WL 17786 (Bkrtcy.N.D.Ill.); *In re Charles A. Stevens & Co.,* 1991 Bankr. Lexis 162, 1991 WL 17787 (Bkrtcy.N.D.Ill.); *In re Grabill Corp.,* 110 B.R. 356 (Bkrtcy.N.D.Ill.1990) ("clearly, the majority view is that attorneys are not entitled to compensation from the funds of the bankruptcy estate unless those services benefit the estate." at 359); *In re Taxman Clothing Co.,* 134 B.R. 286, 291 (N.D.Ill.1991).

879 (2nd Cir.1936). See also, *Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472, 476, 53 S.Ct. 703, 704, 77 L.Ed. 1327 (1933) ("The services within the latter provision (§ 64(b)(3)) are those rendered in aid of the administration of the estate and the carrying out of the provisions of the act") (citing *Randolph v. Scruggs,* 190 U.S. 533, 539, 23 S.Ct. 710, 712, 47 L.Ed. 1165 (1903)).

The *Ryan* Court also cites three post-Code decisions. In *In re Zweig,* 35 B.R. 37, 38 (Bankr.N.D.Ga.1983), the Court refused to allow compensation from the estate for the debtor's attorney for services rendered of a more personal nature to the debtor. The *Zweig* Court rejected a line of cases under the Act that held that the debtor's attorney could be compensated out of the estate for all services provided to the debtor in keeping with the Act's "fresh start" objective. 35 B.R. at 38. Instead, the Court followed the majority rule that fees would not be awarded to the extent that the services were in essence a benefit to the debtor rather than to the estate. *Ibid.*

*Zweig, Rosen*[5], and *Moore*[6] all dealt with this issue. The courts were concerned with the debtor's attorney collecting fees for services provided to the debtor that were neither calculated to produce monetary benefit to the estate, nor rendered in connection with the administration of the case, but were designed to help the debtor personally. *Moore,* 57 B.R. at 271. These courts never held that attorneys could be allowed fees only if their services resulted in a monetary benefit to the estate. Services compensable from the estate have always been actual and necessary services, defined to include services actually rendered that are necessary to the administration of the case or aid the represented party in fulfilling that party's duties under the Bankruptcy Act or Code. Actual and necessary services have never been limited to services that added money to the estate.

Of course, under the old Bankruptcy Act, there was an overriding principal of "spirit of economy" that governed the awarding of compensation in bankruptcy cases. "Spirit of economy" required the court to consider the conservation of the estate and the return to creditors as the most significant factors when awarding compensation of officers. 2 Collier on Bankruptcy § 330.02 at 330–5. The "spirit of economy" concept was supported by Bankruptcy Rule 219,[7] which directed the courts to allow reasonable compensation, giving "due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors." Conservation of the estate became the predominant factor that courts analyzed. See Butenas, *Establishing Attorney's Fees Under the New Bankruptcy Code,* 37 Bus. Law 77 (1981) (citing Collier).

Section 330 of the Code was intended to overrule the judicially fashioned doctrine of "economy of the estate." *In re Nucorp Energy, Inc.,* 764 F.2d 655, 658 (9th Cir. 1985). The legislative history of the Code reflects a significant shift in policy. "Notions of economy of the estate in fixing fees are outdated and have no place in the bankruptcy code." 2 Collier on Bankruptcy § 330.02 at 330–5–6, (citing 124 Cong. Rec. H11, 0912 (Sept. 28, 1978; S17, 408 (Oct. 6, 1978).[8] The clearly stated purpose behind the change in the compensation standard was to encourage skilled attorneys to represent parties in bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess.

---

**5.** *In re Rosen,* 25 B.R. 81 (Bankr.D.S.C.1982).

**6.** *In re Moore,* 57 B.R. 270, 271 (Bankr. W.D.Okla.1986). (*Rosen* and *Moore* were the other Code cases cited by *Ryan* 82 B.R. at 932).

**7.** Superseded by current Bankruptcy Rule 2016, which requires applicants for fees to file a fee petition listing their services performed. Significantly, Rule 2016 (and section 330) omit any reference to "conservation of the estate" and "interests of creditors".

**8.** The Senate version of § 330 contained language implying that some notions of economy of the estate still existed. Congress explicitly rejected the inconsistent Senate language and adopted the House version. 124 Cong.Rec. H11091–92 (daily ed. Sept. 28, 1978); S17408 (daily ed. Oct. 6, 1978); remarks of Rep. Edwards and Sen. DeConcini.

329–330 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6285–6286.

In short, the modern construction of "benefit to the estate" that attorneys' services must result in monetary benefit to the estate is not an application of the pre-Code doctrine of "benefit to the estate"; rather it is a judicially created descendant of the very different doctrine of "economy" or "conservation of the estate." But that doctrine was overruled by section 330 of the Code and should not be re-introduced into compensation analysis under cover of the "benefit to the estate" rubric. Actually there is no need to even use the phrase "benefit to the estate." The issue under section 330(a) is whether services for which compensation is sought are "necessary services." Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate.[9]

This analysis is supported by other provisions of the Bankruptcy Code. Section 1103(c)(5) provides that an unsecured creditors committee may "perform such other services as are in the interest of those represented." In many cases, the interests of the committee may conflict with those of the trustee representing the estate. It is illogical to presume that Congress meant to allow the committee's attorneys compensation only for those services that benefited the estate's position when Congress expressly authorized the committee to act in the interests of different entities and further authorized the committee to hire lawyers to represent it.

Moreover, allowing counsel for the committee to collect fees only when their work brings value into the estate creates a conflict of interest. Rule 1.7(b) of the Rules of Professional Conduct provides that a "lawyer should not represent a client if the representation of that client may be materially limited by the lawyer's own interests." For example, assume a Chapter 11 debtor in possession or trustee proposes a sale of the debtor's assets that, if approved, will not result in any distribution to unsecured creditors, but only to secured and administrative creditors. If there are any reasonable grounds for doing so, obviously it would be in the best interests of the unsecured creditors to block the sale, in the hopes that better terms could be obtained later. The committee representing those creditors is empowered to take any action in their interests. 11 U.S.C. § 1103(c). Indeed, in this hypothetical, the committee might even have a fiduciary *duty* to oppose the sale. Assume further that the committee's lawyer reasonably assesses the probability of blocking the sale as 40%. If monetary benefit to the estate is a prerequisite to compensation, the lawyer would know that the most likely result of objecting to the sale would be that the objection would be overruled and the lawyer would not get paid because the objection would not have monetarily benefited the estate. But the lawyer would also know that a 40% chance of success is not trivial. Certainly, the lawyer would have a problem, but the more important problem is the committee's. The committee could never obtain counsel that could give its undivided loyalty to the committee. Such a result is inconsistent with the statutory authorization to employ attorneys, § 1103(a), and cannot have been intended by Congress.

■■■■ The trustee does not dispute that the services rendered by Much, Shelist and Coopers & Lybrand were at the request of their client. Nor does the trustee argue that the committee's position that the liquidation of this estate should have been achieved through a plan was unreasonable or frivolous. The committee, indeed, had substantial disagreements with the trustee about his administration of this case. The committee was entitled to represent its constituents by seeking to administer this estate in a manner different than that favored by the trustee. Even though this Court disagreed with the committee,

---

9. By way of useful contrast, Bankruptcy Code section 503(b)(3)(B) explicitly requires recovery "for the benefit of the estate any property transferred or concealed by the debtor" as a condition to compensation of a creditor's attorney. But section 330(a) contains no such limitation.

its attorneys services were necessary to the proper representation of the committee.

### Value of Services

Once the court has determined that the services for which compensation is sought were properly compensable and actual and necessary, it must determine the value of those services. Section 330(a)(1) of the Code provides that the amount of compensation must be reasonable based upon the nature, the extent, and value of the services; the time spent on the services; and the cost of comparable services outside of bankruptcy practice. So the court must evaluate what the "actual, necessary services" were worth to the client, based upon the five criteria listed in section 330(a)(1). That is, the court must determine whether the client got its money's worth.[10]

■ Much, Shelist properly divides its application into 11 categories according to particular jobs performed. The trustee objects to a 4 hour entry for drafting an objection to his appointment, found in Category A: "Unsecured Creditors Committee." The Court finds this to be an actual and necessary service on behalf of the committee, given the committee's position.[11] The Court finds that the time spent and fees charged were reasonable.

■ The trustee also objects to Category F: "Plan." The Court has found that the preparation of a plan and disclosure statement was an actual and necessary service performed on behalf of the committee.[12] The issue is whether Much, Shelist gave its client services reasonably worth what they are seeking in fees. The time spent on the plan and disclosure statement (about 51 hours at an average rate of $159 per hour) is excessive for preparation of a liquidating plan. Preliminary drafting and fact gathering should have been done at a lower hourly rate than that ($160 per hour) of the attorney who did most of the work. In any event, preparation of such a

plan and disclosure statement should not have required 51 hours. The Court will allow $6,000.00 for this task. Otherwise, Much, Shelist's requests are reasonable.

■ With regard to Coopers & Lybrand's petition, the Court has found that its work on the plan and disclosure statement was actual and necessary. The Court finds that the $511.00 in fees sought by Coopers & Lybrand for that work is reasonable.

■ The Court finds that the balance of Coopers & Lybrand's request is also reasonable. The trustee employed its own professional to look at the numbers, but the committee was entitled to its own, independent analysis. That was especially true here, because of the complexity of the case, the committee's disputes with the trustee and his professionals and the committee's desire to propose a plan.

### Expenses

■ Section 330(a)(2) provides that attorneys may be reimbursed for actual, necessary expenses. As opposed to § 330(a)(1) wherein the Code allows "reasonable compensation," section 330(a)(2) only authorizes "reimbursement for actual, necessary expenses." Counsel seeking reimbursement for expenses should ordinarily charge the estate the actual amount counsel had to spend on out-of-pocket expenses, regardless of what the same counsel may charge to other clients for the same items of expense. Section 330(a)(2) does not allow a profit on expenses. Ordinary firm overhead is not reimbursable. *Wildman,* 72 B.R. at 731.

■ Much, Shelist represents that the expense reimbursement it seeks is based on rates it charges to all its clients, with the exception of charges for telecopying and computerized research, for which Much, Shelist charged the estate one-half the normal rate.[13] What law firms charge clients outside of bankruptcy for expenses is not the correct standard. The charges here,

10. For examples of courts making this determination, see *Wildman,* 72 B.R. at 708–713 and *Pettibone,* 74 B.R. at 301–310.

11. See § 1103(c)(4).

12. See § 1103(c)(3).

13. Saving the estate $790.52.

however, do not appear to be out of line with what this Court would expect counsel's actual costs to have been. Absent objections or evidence to the contrary, the Court presumes that Much, Shelist has charged the estate the actual costs. Thus, the Court grants Much, Shelist's request for reimbursement of expenses. The Court also finds that Coopers & Lybrand's expenses are fully reimbursable.