**In the Matter of CARIBOU PARTNERSHIP III, aka Caribou Group III, Debtor.**

**Bankruptcy No. 90–12132 HCD.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 10, 1993.

Howard Sandler, Ft. Wayne, IN, for applicant.

Leonard Opperman, Indianapolis, IN, for objector.

## MEMORANDUM OF DECISION

HARRY C. DEES, Jr., Bankruptcy Judge.

On June 12, 1992, Howard B. Sandler ("Sandler"), co-counsel for the debtor, filed his AMENDED FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JULY 1, 1991 THROUGH MAY 12, 1992. Fort Wayne National Bank ("National") filed its objection to Sandler's

amended application on September 2, 1992. The court held a hearing on the amended application and objection on November 17, 1992, and took the matter under advisement on January 7, 1993, following the time allowed for submitting briefs.

### *Jurisdiction*

Pursuant to 28 U.S.C. § 157(a) and Northern District of Indiana General Rule 45, the United States District Court for the Northern District of Indiana has referred this case to this court for hearing and determination. After reviewing the record, the court determines that the matter before it is a core proceeding within the meaning of § 157(b)(2)(A) over which this court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This entry shall serve as findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014.

### *Background*

Caribou Partnership III, a/k/a Caribou Group III, filed its petition under Chapter 11 of the Bankruptcy Code on December 11, 1990. On the same date related partnerships, Caribou Partnership II and Caribou Partnership IV, filed their petitions under Chapter 11. Each of the debtors is a general partnership with two general partners, James E. Harding and Richard L. Phillips. The debtors' primary assets are three office buildings located on North Meridian Street in Indianapolis, Indiana. The court appointed Sandler as counsel for the debtors on February 8, 1991. On February 24, 1992, the court entered its order dismissing this case with the court retaining jurisdiction to determine appropriate fees and expenses of the debtor's counsel.

In his final application Sandler sought compensation in the amount of $13,278.50 and reimbursement of expenses in the amount of $401.35 for services rendered from July 1, 1991, through May 12, 1992. Sandler indicated that his law firm used two of its lawyers to perform services required in the case, used Federal Express or similar overnight air carriers, and sought reimbursement for the travel time of its attorneys at the full applicable rate. Sandler noted that on his motion to reconsider the court's order of March 9, 1992, the court approved these exceptions to its general guidelines for fee applications by its order of April 15, 1992. Sandler asked the court to review and consider the application of the Seventh Circuit's recent opinion in *Steinlauf v. Continental Illinois Corp. (In re Continental Illinois Securities Litigation)*, 962 F.2d 566 (7th Cir.1992), to this case. Pursuant to *Continental Illinois*, Sandler requested a "payment of an additional $3,104.61, plus an additional $135.20 per month for each month after May 15, 1992 that [his] fees remain unpaid, as interest for late payment charged at Applicant's customary market rate of 12%." Sandler's application at 4.

National objected to Sandler's application, alleging that the fees requested are excessive, do not comply with the court's guidelines regarding fee requests, and are duplicative. National submitted that Sandler's services did not benefit the debtor's estate as 11 U.S.C. § 503(b)(4) requires, but benefitted only the debtor's principals. National thus asked the court to deny Sandler's application. Finally, National argued that after the state court's grant of summary judgment in favor of National against the debtor's principals on certain guarantees on July 15, 1991, "it was apparent that the Debtor would be unable to effectuate a plan of reorganization, and therefore, the services rendered thereafter were not of actual and demonstrable benefit to the estate." National's brief at 2.

In response to National's objection Sandler filed his supplemental affidavit which stated in relevant part:

4. [Sandler] is seeking compensation for services and expenses for which it would expect to be and is compensated for by its non-bankruptcy clients and bankruptcy clients where the payments of fees is not reviewed by the bankruptcy court at [Sandler's] usual and customary rate.

5. All services performed were necessary for the competent representation of

the client, or required by the Bankruptcy Code and Rules....

6. The hourly rates charged by [Sandler] during the timeframe covered by the Final Application are market rates, i.e., those rates that [Sandler] receives from its non-bankruptcy clients and bankruptcy clients where the payments of fees is not reviewed by the bankruptcy court.

7. [Sandler] charges all its clients, including its non-bankruptcy clients, for supervision of mass-mailings and these clients pay [Sandler] for this service.

8. [Sandler] charges all its clients, including its non-bankruptcy clients, for interoffice conferences and these clients pay [Sandler] for this service.

9. [Sandler] charges all its clients, including its non-bankruptcy clients, 100% of travel time for travel outside of Allen County that is associated with the representation of the clients and these clients pay [Sandler] for this service.

10. [Sandler's] Final Application for services rendered is from July 1, 1991 through May 12, 1992, which is from 6 to 16 months ago. [Sandler] customarily seeks and receives interest on past due accounts (over 45 days) at a rate of 12% per annum. Accordingly, interest on these overdue accounts ... is appropriate.

11. During the timeframe for which compensation is sought, the individual partners of the Debtor used independent counsel for negotiation with [National]. [Sandler's] function during this timeframe was exclusively as counsel for Debtor.

12. During the timeframe for which compensation is sought, [Sandler] as Debtor's counsel, the partners of Debtor, and their respective counsel discussed and analyzed many different proposals to attempt to reorganize the Debtor. However, the partners decided that the real estate owned by the partnership would be turned over to [National] and the [sic] each partner would directly negotiate with [National] with respect to guarantees. Once this was decided (which occurred approximately at the same time

that the parties moved to have the property abandoned), it was [Sandler's] charge to then wind up the estate via dismissal or otherwise. During the time that the partners negotiated their own deals, [Sandler] administered the assets, dealt with claims, ensured reporting to the court, responded to court orders and deadlines, tended to contested matter [sic] and adversary proceedings (which required hearings in South Bend), and worked toward dismissal and resolution of the case.

SUPPLEMENTAL AFFIDAVIT OF HOWARD B. SANDLER at 1–3. Based on the affidavit, Sandler submitted that the holdings of *Continental Illinois* should apply to fee applications in bankruptcy cases and that his final application should be allowed in full.

### *Discussion and Decision*

The issue before the court is whether Sandler's amended final application for fees and expenses may be approved. In connection with the determination of fees in this case, the parties have raised questions as to: (1) whether the Seventh Circuit's holding in *Continental Illinois* applies in the bankruptcy context, (2) whether Sandler's fees should be disallowed because they allegedly do not comply with this court's guidelines concerning fee applications, (3) whether Sandler's fees are excessive or duplicative, and (4) whether the court should disallow the fees and expenses because they did not benefit the debtor's estate. The court will discuss these questions in turn.

1. Applicability of the Seventh Circuit's ruling in *Continental Illinois*

 Initially, the parties raised the issue of whether the *Continental Illinois* case applies to the award of professional fees and reimbursement of expenses in the bankruptcy setting. To determine this issue, the court first must look to the Bankruptcy Code. Pursuant to 11 U.S.C. § 330(a) the court may award a professional person:

(1) reasonable compensation for actual, necessary services rendered by such ... professional person ... and by any paraprofessional persons employed by such ... professional person ... based on the nature, the extent, and the value of such services, the time spent on such services, and *the cost of comparable services other than in a case under this title;* and (2) reimbursement for actual, necessary expenses.

11 U.S.C.S. § 330(a) (Callaghan 1992). (emphasis added). As the Seventh Circuit noted in *In re UNR Industries, Inc.,* 986 F.2d 207, 208–09 (7th Cir.1993), the two-fold goal of § 330 is "to ensure that compensation is fair and reasonable and that future lawyers won't be deterred from taking bankruptcy cases." Section 330 in effect "overrule[d] the judicially fashioned doctrine of 'economy of the estate'" which governed the award of compensation under the prior Bankruptcy Act. *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 487 (Bankr. N.D.Ill.1992), citing *In re Nucorp Energy, Inc.,* 764 F.2d 655, 658 (9th Cir.1985). The "'[s]pirit of economy' required the court to consider the conservation of the estate and the return to creditors as the most significant factors when awarding compensation of officers."[1] *Id.,* citing 2 Collier on Bankr. (MB) § 330.02 at 330–5 and Butenas, *Establishing Attorney's Fees Under the New Bankruptcy Code,* 37 Bus.Law. 77 (1981) (citing Collier). Section 330 represented a new direction, incorporating the market approach espoused in *Continental Illinois:*

> The legislative history of the Code reflects a significant shift in policy. "Notions of economy of the estate in fixing fees are outdated and have no place in the bankruptcy code." 2 Collier on Bankruptcy [MB] § 330.02 at 330–5–6 (citing 124 Cong.Rec. H11, 0912 (Sept. 28, 1978; S17, 408 (Oct. 6, 1978). The clearly stated purpose behind the change in

the compensation standard was to encourage skilled attorneys to represent parties in bankruptcy. H.R.Rep. No. 595, 95th Cong., 1st Sess. 329–330 (1977); U.S.Code Cong. & Admin.News 1978, 5787, 6285–6286.

140 B.R. at 487–88. Inasmuch as § 330(a) contemplates comparing fees in a bankruptcy case to the cost of comparable services outside of bankruptcy, the court agrees that the holding of *Continental Illinois* is relevant in awarding fees and allowing reimbursement of expenses in title 11 cases.

■ The court would note, however, that the cost of comparable services outside of the bankruptcy context is but one of the elements which a bankruptcy court is to consider pursuant to the statute. *See UNR Industries, Inc.,* 986 F.2d at 211, citing *In re Apex Oil Co.,* 960 F.2d 728, 733 (8th Cir.1992) ("the cost of comparable services is just one of a number of factors to consider in calculating reasonableness"). Section 330(a)(1) also requires that the compensation be reasonable and that it represent time actually spent on necessary services. The court is to make this determination based not only on the cost of comparable services other than in a case under this title, but "based on the nature, the extent, the value of such services, [and] the time spent on such services...." 11 U.S.C.S. § 330(a) (Law.Co-op.1985 and Supp. May 1992). Federal Rule of Bankruptcy Procedure 2016 further requires that a professional seeking interim or final compensation or reimbursement of expenses from an estate "shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed.R.Bankr.P. 2016 (Callaghan 1992). Hence, an attorney's representation that he

---

**1.** Section 241 of the Bankruptcy Act of 1898 strictly limited compensation of professionals, "emphasiz[ing] economy of administration and conservation of the estate." *UNR Industries, Inc.,* 986 F.2d at 208, citing *In re Beverly Crest Convalescent Hosp., Inc.,* 548 F.2d 817, 820–21 (9th Cir.1976). Prior Bankruptcy Rule 219 like-

wise "directed the courts to allow reasonable compensation, giving 'due consideration to the nature, extent, and value of the services rendered as well as to the conservation of the estate and the interests of creditors.'" 140 B.R. at 487 (quoting former Bankruptcy Rule 219).

or she routinely charges and receives payment for certain services outside of the bankruptcy setting may not be sufficient to establish entitlement to allowance of the fees in a bankruptcy case.

■■■ The applicant has the burden of proof in submitting a fee request. *In re Office Products of America, Inc.*, 136 B.R. 964, 976 (Bankr.W.D.Tex.1992), citing *Continental Ill. Nat'l Bank & Trust Co. v. Charles N. Wooten, Ltd. (In re Evangeline Ref. Co.)*, 890 F.2d 1312, 1326 (5th Cir.1989) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Sandler thus has the burden to show that his services were actual and necessary and that the compensation requested is reasonable. *Id.* As the Seventh Circuit observed in *Continental Illinois*, a court's task in determining whether an applicant has met this burden is often difficult, owing to the fact that most of the lawyer's work occurs outside of the courtroom. 962 F.2d at 570. In addition, market rates and practices continually change, leaving courts at a disadvantage in attempting to determine the cost of comparable services outside the bankruptcy setting. A bankruptcy court, however, has the independent obligation to determine whether the request for compensation falls within the purview of § 330(a). *Cohen & Thiros, P.C. v. Keen Enterprises, Inc.*, 44 B.R. 570, 574–75 (N.D.Ind.1984), citing *In re Meade Land & Dev. Co.*, 527 F.2d 280, 284 (3rd Cir.1975); *In re Environmental Waste Control*, 122 B.R. 341, 345 (Bankr. N.D.Ind.1990), citing *In re Wyslak*, 94 B.R. 540, 541 (Bankr.N.D.Ill.1988); *In re Kreidle*, 85 B.R. 573 (Bankr.D.Col.1988); *In re IDAK Corp.*, 26 B.R. 793 (Bankr.D.Mass. 1982); *In re Crutcher Transfer Line, Inc.*, 20 B.R. 705 (Bankr.W.D.Ky.1982). As a practical matter, the court must rely on the applicant (as well as any objectors) to inform the court of current market values and practices. In some instances the court may require an applicant to submit evidence concerning these matters. Although *Continental Illinois* is not a bankruptcy case and thus may not be entirely applicable in the bankruptcy setting, the court believes its market approach certainly is relevant to the award of compensation and reimbursement of expenses in bankruptcy matters.

2. Compliance with the court's guidelines concerning fee applications

In an effort to avoid lengthy evidentiary hearings on every fee application and to assist professionals in obtaining prompt approval of their fees and expenses, this court has established guidelines regarding the payment of compensation and reimbursement of expenses in bankruptcy cases. The court has attempted to be flexible in modifying the guidelines as needed to reflect market-based considerations. Most recently, the court modified its policies concerning the allowance of photocopying and facsimile transmission charges. *In re Nephi Rubber Products Corp.*, 146 B.R. 782, 783 (Bankr.N.D.Ind.1992).[2] In addition, the court has freely allowed professionals (including the attorneys in this case) to justify deviations from the guidelines based on the unique circumstances of their cases. Again, Sandler has asked the court to allow exceptions to its guidelines for services rendered and expenses incurred from July 1, 1991, through May 12, 1992. Inasmuch as National has objected to the request, the court will determine whether the exceptions are appropriate for the period covered in the amended final application.

a. *Duplicate entries for attending conferences and hearings, Federal Express charges, and travel costs*

■■■ As Sandler noted, the court in its ORDER of April 15, 1992 (on reconsideration of its MEMORANDUM OF DECISION and JUDGMENT of March 9, 1992), determined based on the complexity of this

---

**2.** In *Nephi,* the court concluded that the applicant showed that 20¢ per page accurately reflected a firm's actual costs in photocopying documents and acknowledged that communicating documents by facsimile transmissions has become a "way of life" in our society. The court accordingly revised its guidelines to allow an applicant to collect 20¢ per page for photocopying expenses and eased its restrictions on the use of facsimile transmissions. *Id.* at 783–84.

case and the substantial nature of the asset involved that the use of two attorneys was necessary for services rendered from March 1, 1991, through June 30, 1991. In addition, the court found that Sandler did not abuse the use of Federal Express and had justified the allowance of his travel costs in full. The court noted that unlike the situation in which an attorney accepts employment by an out-of-town debtor with the expectation of having to travel a considerable distance to appear in court on behalf of the client, Sandler whose office is located in Fort Wayne, Indiana, originally filed this case in Fort Wayne where the debtor's main office is located and the principals of the debtor reside. Later, upon the recusal of the Honorable Robert E. Grant, Judge for the Fort Wayne Division of the Northern District of Indiana, the court transferred the case to South Bend. Albeit the debtor could have retained South Bend counsel to represent it following the recusal, the court agreed that retention of Fort Wayne counsel was more economical and that the estate, rather than Sandler, should bear the full burden of the required travel to South Bend. The court will stand by its prior ruling on the use of two attorneys in this case, Federal Express charges, and travel. Reviewing the description of services for which Sandler seeks compensation in his amended final application, the court concludes that Sandler's fees and expenses for these matters are reasonable and necessary given the unique circumstances of this case and that Sandler has justified deviating from the court's guidelines with respect to these matters. Although the court would agree that a law firm's services in winding up a bankruptcy case may not require the attention necessary in the initial stages of the case or in midst of forthgoing negotiations, the court believes that the use of two attorneys throughout this case was necessary and that any duplication of time was not abusive or unreasonable. The court accordingly overrules National's objection insofar as it concerns these items.

*b. Charges for services described as "diary calendar" and "supervision of mailing"*

In its ORDER of April 15, 1992, the court declined to modify its ruling disallowing additional compensation for services described as "diary calendar" and "supervision of mailing," finding that the services were secretarial in nature and that an attorney's fee for *de minimis* services such as these should be included in the attorney's normal billing rate. The court observed that every attorney (and/or his office staff) must keep track of deadlines and court dates pertaining to a case. In addition, an attorney is responsible to supervise his office staff to ensure that they complete those tasks assigned to them, such as typing and mailing documents. Attorneys, however, generally do not include a fee for these services in their applications for compensation. The court concluded that the charge for services of this nature may be likened to overhead costs which should be reflected in the attorney's hourly rate rather than billed separately and declined to allow additional compensation for the services.

■ Sandler asked the court to allow compensation for these services because his firm "charges all its clients, including its non-bankruptcy clients, for supervision of mass-mailings and these clients pay ... for this service." SUPPLEMENTAL AFFIDAVIT OF HOWARD B. SANDLER at 2. The court declines to do so based upon its view of the nature, extent, and value of the services as well as the time spent on them, and the cost of comparable services in non-bankruptcy cases. The court finds that the services are *de minimis* in nature, requiring little time or effort, and that attorneys (both in the bankruptcy and non-bankruptcy context) generally do not charge separately for such services. The court thus will not allow additional compensation for the following services: [3]

---

**3.** The court notes that the services listed also appear to be unnecessarily duplicative.

| DESCRIPTION—ATTORNEY | RATE | HOURS | AMOUNT |
|---|---|---|---|
| 08/21/91 FEE—HBS<br>Supervision of mailing two fee notices and signing of certificate of service | $150.00 | 0.15 | $22.50 |
| 08/21/91 FEE–BAB<br>Supervision of mailing notices for fees (BLSSF and CPA) (.20) | 65.00 | 0.20 | 13.00 |
| 08/30/91 FEE–BAB<br>Supervision of mailing notice setting disclosure statement hearing (.10) | 65.00 | 0.10 | 6.50 |
| 08/30/91 FEE–HBS<br>Supervision of mailing notice setting disclosure statement hearing and signing of certificate of service | 150.00 | 0.15 | 22.50 |
| 12/13/91 FEE—HBS<br>Supervision of mailing and signing of certificate of service (.10) re: stipulation for abandonment | 150.00 | 0.10 | 15.00 |
| 12/13/91 FEE–BAB<br>Supervision of mailing (.10) | 65.00 | 0.10 | 6.50 |
| FEES DISALLOWED | | | $86.00 |

### c. *Photocopying expenses*

■ Sandler charged 25¢ to 30¢ per copy for photocopying expenses in his amended final application. Pursuant to the court's guidelines and decision in *In re Nephi Rubber Products Corp.*, 146 B.R. 782, 783–84, the court allows an applicant to collect up to 20¢ per page for photocopying expenses without presenting actual evidence of its costs. The arguments and evidence presented in *Nephi* convinced the court that this figure accurately reflects a firm's actual costs in photocopying documents. An applicant is free to submit evidence to the court showing that his or her expenses reasonably exceeded the 20¢ per page guideline. In this case, however, Sandler. presented no evidence to justify deviating from the court's guideline. The court therefore will allow only 20¢ per page for photocopying expenses included in the amended final application. The disallowed photocopying expenses total $25.45.

### d. *Interest on unpaid attorney's fees and unreimbursed expenses*

■ In his amended final application Sandler asked the court to consider whether under the rationale of *Continental Illinois* he may collect interest on uncollected attorney's fees and expenses. The court has not previously addressed this matter by order or in its guidelines. Reviewing the case law on this issue, the court concludes that a professional is entitled to the federal judgment rate of interest on his or her uncollected fees and expenses from the date of the allowance of the administrative claim by the court.[4] Sandler had argued that he should be able to continue his practice of charging 12% per annum on accounts which are not paid within 45 days of the date of the service rendered. In his

**4.** Titles 28 U.S.C. § 1961 and 40 U.S.C. § 258 establish the maximum interest allowed on judgments of the federal courts. The maximum rate of interest is the average accepted coupon rate at the most recent auction of 52–week Treasury Bills.

amended final application, covering services rendered from July 1, 1991, through May 12, 1992, Sandler requested the payment of an additional $3,104.61, plus $135.20 per month for each month after May 15, 1992, that the fees remain unpaid, as interest. The court denies in part Sandler's request.

The Bankruptcy Code allows attorneys to apply for compensation or reimbursement of expenses "not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits...." 11 U.S.C.S. § 331 (Callaghan 1992). Generally, after notice and hearing on a fee application, the court promptly enters an order concerning allowance of the fees and expenses. The court recognizes that owing to the objection to Sandler's application, the complicated issues raised in the application and objection, and the parties' request to brief the relevant issues, it is considering the allowance of Sandler's fees and expenses many months after the filing of his application. Courts have held that the payment of interest on uncollected fees is appropriate. *Boldt v. Crake (In re Riverside–Linden Investment Co.)*, 945 F.2d 320, 323–24 (9th Cir. 1991); *In re Motley*, 150 B.R. 16, 18–19 (Bankr.E.D.Va.1992) (dealing with trustee's fees, but noting that the analysis of fees for a trustee's attorney leads to the same result); *In re Energy Cooperative, Inc.*, 95 B.R. 961, 966 (Bankr.N.D.Ill.1988); and *In re Commercial Consortium of California*, 135 B.R. 120, 127 (Bankr.C.D.Cal. 1991). These courts have concluded that interest on unpaid professional fees and expenses awarded under 11 U.S.C. § 330(a) accrues from the date the court awards the fees. *Id.* As the Ninth Circuit noted, § 726(a)(5) specifically authorizes the payment of interest on claims of the kind specified in § 507, including administrative expenses allowed under § 503(b). 945 F.2d at 324. Inasmuch as Section 503(b) refers to "compensation and reimbursement awarded under section 330(a)," the Ninth Circuit concluded in *Boldt* that "[i]t is not until the fees have been awarded by the bankruptcy court pursuant to Section 330, therefore,

that they become an administrative expense entitling them to treatment as a claim under Section 726(a)(5)." *Id.* at 324. Similarly, in its supplemental opinion dated January 24, 1989, the Bankruptcy Court for the Northern District of Illinois concluded that interest awarded as enhancement for delay in payment begins to run from the date the court awards the fees, rather than the date the services are provided. *Energy Cooperative*, 95 B.R. at 968. The court agrees with the rationale of these cases. The court notes that Sandler could have applied and received interim payment for his fees and expenses every 120 days. Instead, he chose to wait 10½ months to file his final application.[5] The court does not believe that the debtor's estate should be penalized for Sandler's delay in seeking payment of his fees. On the other hand, the court concludes that once the fees are awarded, the debtor's estate should be required to pay interest on the allowed administrative claim (which is fixed in amount and no longer uncertain), assuming the applicant has requested the same.

The *Energy Cooperative* court further determined that enhancement for delay in the payment of fees and expenses:

> ... should take the form of the award of interest on the unpaid fees calculated at the U.S. Treasury Bill rate. See *Zipes v. Trans World Airlines, Inc.*, 846 F.2d 434 (7th Cir.1988). Cf. *Lippo v. Mobil Oil Corp.*, 692 F.Supp. 826 (N.D.Ill.1988). Interest at that rate is particularly appropriate in this case because that is the rate being earned on estate funds invested by the Trustee. To compensate counsel for delay at a higher rate than that earned by the estate would constitute an unnecessary burden on the estate.

95 B.R. at 966–67. The court believes that the United States 52–week Treasury Bill rate is an appropriate rate of interest to be applied to allowed claims for professional fees in bankruptcy cases. The court concludes that Sandler has failed to justify the award of a higher rate of interest on his

---

**5.** The court of course realizes that waiting to file the application may have been more cost effi-

cient for Sandler in this case.

claim. Although Sandler's firm routinely charges 12% interest per annum on past due accounts, the court has insufficient evidence before it to conclude that attorneys in the marketplace generally charge this rate of interest on past due invoices or that they consider accounts to be "past due" after 45 days. The court will allow interest on allowed administrative claims at the maximum rate of interest allowed on judgments of the federal courts unless an applicant submits evidence showing that higher rate is justified. The court accordingly grants in part and denies in part Sandler's request for interest on his unpaid fees and expenses.

### 3. Excessive or duplicative fees

National argued that Sandler's fees were excessive and/or duplicative. Reviewing the amended final application, the court agrees that some of the services rendered were duplicative. The court addressed the duplication of services in section 2a above and determined that the use of two attorneys in attending conferences and hearings was justified. As these attorneys were actively involved in the case, the court concludes that duplicative entries for reviewing court documents and pleadings also was justified. The court disallowed other unnecessarily duplicative services, *i.e.,* those relating to the supervision of mass mailings, on other grounds in section 2b. The court thus sustains in part and denies in part National's objection to the duplicative services. The court, however, is unable to conclude based on the arguments presented that Sandler's fees are excessive for the services performed. Sandler's hourly rate is acceptable and he does not appear to have "over-charged" for the services rendered. The court denies this portion of National's objection.

### 4. Benefit to the debtor's estate

■ National's last objection relates to the benefit of Sandler's services to the debtor's estate. National characterized this case as a "bad faith" filing and argued that after the date of the state court's granting of summary judgment in favor of National and against the debtor's princi-

pals, the debtor had no reasonable possibility of reorganizing and Sandler's services were of no value to the debtor's estate. The court disagrees. The court notes that services rendered on behalf of a debtor's estate need not result in a monetary benefit to be considered beneficial to the estate. *In re Lifschultz Fast Freight, Inc.,* 140 B.R. 482, 486–88 (Bankr.N.D.Ill.1992). "Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate." *Id.* at 488 (footnote omitted). In this case the court concludes that Sandler's services in "winding up" the debtor's bankruptcy case after the state court summary judgment ruling were actual and necessary services which benefitted the debtor's estate.

### *Conclusion*

The court grants in part and denies in part Sandler's AMENDED FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR THE PERIOD OF JULY 1, 1991 THROUGH MAY 12, 1992, and sustains in part and denies in part National's objection thereto, finding that: (1) the Seventh Circuit's ruling in *Continental Illinois* is relevant in the bankruptcy setting; (2) Sandler has justified deviating from the court's fee guidelines concerning the use of two attorneys, Federal Express charges, and travel; (3) Sandler has failed to justify reimbursement for services described as "diary calendar" and "supervision of mailing" or charges exceeding 20¢ per page for photocopying expenses; (4) Sandler is entitled to receive the federal judgment rate of interest on his uncollected fees and expenses from the date of the allowance of the administrative claim by the court; (5) except as designated herein, Sandler's fees were not excessive or duplicative; and (6) Sandler's services in "winding up" the estate were actual and necessary within the meaning of 11 U.S.C. § 330(a)(1) and of benefit to the debtor's estate.

In accordance with these findings, the court approves the amended final applica-

tion and allows Sandler's administrative claim for professional fees and expenses as follows:

| | |
|---|---|
| Fees/expenses applied for | $13,679.85 |
| Less | |
| Disallowance of services described as "diary calendar" and "supervision of mailing" | (86.00) |
| Disallowance of photocopying charges exceeding 20¢ per page | (25.45) |
| NET APPROVED FEES/EXPENSES | $13,568.40 |

The court determines that the approved compensation is reasonable for the professional services rendered in connection with this case and that the expenses are proper reimbursement of actual and necessary expenses incurred in connection with the services rendered in this case. Sandler shall be entitled to simple interest at the federal judgment rate on any unpaid portion of his net approved administrative claim for professional fees and expenses from the date of this court's JUDGMENT reflecting the allowance of his claim.

SO ORDERED.