**In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

**Bankruptcy Nos. 98–05162–R, 98–05166–R.**

United States Bankruptcy Court,
N.D. Oklahoma.

March 15, 1999.

Larry M. Wolfson, Jenner & Block, Chicago, IL, Neal Tomlins, Tomlins & Goins, Tulsa, OK, for debtor.

Robert S. Glass, Johnson, Allen, Jones & Dornblaser, Tulsa, OK, Jeffrey W. Linstrom, Jones, Day, Reavis & Pogue, Chicago, IL, for Official Committee of Unsecured Creditors.

Brad Eric Scheler, Robert E. Juceam, George B. South, Fried, Frank, Harris, Shriver & Jacobson, New York City, Sidney K. Swinson, Gable & Gotwals, Tulsa, OK, for Official Committee of Asset–Backed Securityholders.

Katherine Vance, Assistant U.S. Trustee, Tulsa, OK.

### ORDER DENYING MOTION FOR ORDER AUTHORIZING PARTIAL PAYMENT OF MONTHLY INVOICES OF PROFESSIONALS (CFS)

DANA L. RASURE, Chief Judge.

On January 14, 1999, Debtor Commercial Financial Services, Inc. ("CFS") filed the Motion of CFS for Order Authorizing Partial Payment of Monthly Invoices of Professionals (CFS) (the "Motion"). On February 8, 1999, CFS filed a Memorandum of Law in Support of the Motion. Also filed on February 8, 1999, were the United States Trustee's Comments Regarding Motion of CFS for Or-

der Authorizing Partial Payment of Monthly Invoices of Professionals (CFS) and the Statement of the Official Committee of Asset–Backed Securityholders in Support of Motion of CFS for Order Authorizing Partial Payment of Monthly Invoices of Professionals. On February 9, 1999, the Official Committee of Unsecured Creditors filed a Reply in support of CFS's Motion.[1]

In the Motion, CFS requests the entry of an order (1) authorizing CFS to review and approve *monthly* invoices of Court-approved professionals for legal, management, and financial consulting services for CFS and the Committees; and (2) authorizing CFS to pay 80% of the invoiced fees and all out-of pocket expenses on a monthly basis, with all payments subject to interim and final approval and allowance by the Court upon application within the time parameters set for forth by the Bankruptcy Code and Bankruptcy Rules. CFS relies on the case of *In re Knudsen Corp.*, 84 B.R. 668 (9th Cir. BAP 1988), and its progeny; two pre-*Knudsen* cases emanating from bankruptcy courts in Colorado;[2] and various pro-forma administrative orders entered in other jurisdictions. The Committees' briefs support CFS's request and echo CFS's authorities. The United States Trustee does not object to the principle of monthly payments to professionals, but rather to the procedures proposed by CFS for implementing such a monthly payment arrangement.

A hearing on the Motion was held on February 9, 1999, at which CFS presented argument in support of its Motion. No evidence was presented. The parties requested that the Court take judicial notice of the customs of other bankruptcy courts with respect to payment of professional fees in large chapter 11 cases. Upon review of the Motion, the various briefs and comments and the authorities cited therein, the arguments of counsel, and the applicable law, the Court concludes as follows:

Notwithstanding that other bankruptcy courts, including some bankruptcy courts in this Circuit, permit monthly payments to professionals prior to allowance by the court, no party has offered any pertinent case authorities that are binding on this Court. Therefore the Code itself must be examined to determine whether the Court has authority to grant the relief CFS and the Committees desire.

The Bankruptcy Code and Bankruptcy Rules contain several specific provisions governing the approval and allowance of professional fees and expenses. *See* 11 U.S.C. §§ 328–31; Bankruptcy Rules 2002(a)(6) and (c)(2); 2013; 2016; and 2017. Section 330 of the Bankruptcy Code—Compensation of Officers—outlines the criteria to be evaluated in determining compensation of professionals employed under Sections 327 and 1103 of the Bankruptcy Code. Section 330 requires a review of the entire history of a chapter 11 case to determine whether the professional services rendered were necessary in the administration of the estate, or otherwise beneficial to the estate, and whether the amount of compensation and reimbursement sought from the estate by such professionals is reasonable.

Section 330's method of reviewing compensation was derived from similar provisions contained in the Bankruptcy Act which did not provide for interim compensation.[3] In 1978, Congress acknowledged that review and allowance of compensation only at the conclusion of the case caused an unwarranted financial hardship to professionals rendering services to the estate. In light of such recognition, Congress enacted Section 331 which provides that—

> [A]ny professional employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often as the court per-

---

1. The Official Committee of Unsecured Creditors and the Official Committee of Asset–Backed Securityholders are collectively referred to herein as the "Committees."

2. *In re Kaiser Steel Corp.*, 74 B.R. 885 (Bankr. D.Colo.1987); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.D.Colo.1987).

3. *See, e.g.*, Bankruptcy Act of 1898, ch. 541, §§ 241–250 (codified at 11 U.S.C. §§ 641–650, repealed 1978).

mits, for such compensation for services rendered before the date of such application or reimbursement for expense incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331. Legislative history evidences the intent of Congress in enacting Section 331 as follows—

> Section 331 permits trustees and professional persons to apply to the court not more than once every 120 days for interim compensation and reimbursement payments. The court may permit more frequent applications if the circumstances warrant, such as in very large cases where the legal work is extensive and merits more frequent payments. The court is authorized to allow and order disbursement to the applicant of compensation and reimbursement *that is otherwise allowable under Section 330.* The *only* effect of this section is to remove any doubt that officers of the estate may apply for, and the court may approve, compensation and reimbursement during the case, instead of being required to wait until the end of the case, which in some instances, may be years. The practice of interim compensation is followed in some courts today, but has been subject to some question. This section explicitly authorizes it. This section will apply to professionals such as auctioneers and appraisers only if they are not paid on a per job basis.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), *reprinted in* Collier on Bankruptcy, App. C, Pt. 4(d)(i) at 1460 (15th ed.1998) (emphasis added) ("H.R.Rep.595").

▬▬ It is clear that Section 331 was intended to alleviate the unwarranted finan-cial burden on professionals that occurs when judicial scrutiny, allowance, and payment of fee applications is withheld until the conclusion of the case, as contemplated by Section 330. Congress believed that permitting interim payments at 120–day intervals was sufficient to relieve the financial burden in all cases except those in which unusual circumstances warranted more frequent applications and payment, giving the example of "very large cases where the legal work is extensive and merits more frequent payments." *Id.* Section 331 provides, however, that defining the circumstances under which deviation from the 120–day period is appropriate lies solely within the discretion of the Court before whom the case is pending. This determination must be made on a case-by-case basis.

The Court therefore has discretion to permit the application for, and authorize the interim payment of, professional fees and expenses in this case more frequently than every 120 days. In the absence of controlling authority, this Court must craft the criteria or circumstances under which deviation from the 120–day interval is appropriate. CFS and the Committees suggest that the so-called *Knudsen* factors should serve as a guide in determining whether professionals in this case should be excepted from the 120–day requirement. CFS and the Committees also advocate that the Court should *deviate* from the *Knudsen* factors, because one of the *Knudsen* factors, undue financial hardship, is not present with respect to most of the professionals retained in this case.

In *In re Knudsen Corp.,* 84 B.R. 668 (9th Cir. BAP 1988), the Ninth Circuit Bankruptcy Appellate Panel affirmed a monthly payment procedure similar to the procedure sought by CFS and the Committees in this case.[4] The issue presented to the panel on

---

4. The fee application and payment procedure affirmed in *Knudsen* was as follows:

> At the end of each month, counsel submits to the Debtors statements for compensation and reimbursement of expenses for the prior month. The statements, based upon counsel's customary hourly rates, are paid promptly if acceptable to the Debtors. At least ten days before the first interim payment is sought, each law firm files a schedule of rates with the bankruptcy court and serves it on the Debtors, on counsel for Citicorp, on the United States Trustee, on the Securities and Exchange Commission, and on counsel for the creditors' committees. Within fifteen days following the end of each three month period, counsel files with the bankruptcy court and serves on the above parties-in-interest, an application for court approval of the statements filed during the three month period. If quarterly statements are not

appeal was whether the bankruptcy court had authority to approve a procedure that permitted periodic post-petition payments to professionals *without prior court approval.* The panel approved the pre-approval payments to professionals by framing them as "post-petition retainers." The panel held that "in certain rare circumstances where adequate safeguards are taken, a bankruptcy court may implement a fee payment procedure such as the one used here. This is especially true where, as here, the bankruptcy case is essentially a controlled liquidation for the benefit of a secured creditor." *Id.* at 671. In so holding, the panel established four factors it considered to be essential in order to justify such pre-approval payments. The *Knudsen* court stated:

> [I]n the rare case where the court can make the following findings, a fee retainer procedure like the one here may be authorized:
>
> 1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;
>
> 2. The court is convinced that waiting an extended period for payment would place an undue hardship on counsel;
>
> 3. The court is satisfied that counsel can respond to any reassessment in one or more of the ways listed above;[5] and
>
> 4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Knudsen,* 84 B.R. at 672–73. The panel found that the professionals in the *Knudsen* case satisfied the criteria. The panel also

found significant that the sole secured creditor, who was benefiting from the liquidation of the debtor's assets and who was funding the administrative expenses of the estate, consented to the procedure of advancing professional fees prior to approval by the court.

This case is easily distinguishable from *Knudsen* on its facts. This case is not a "controlled liquidation" for the benefit of a single secured creditor. CFS owes hundreds of millions of dollars to thousands of unsecured creditors. CFS's administrative expenses are not being paid from post-petition financing by a secured creditor who is the primary beneficiary of a liquidation, as in *Knudsen,* but from the unencumbered assets of the CFS estate. Broader due process issues exist in this case.

■ Substantively, this Court disagrees with *Knudsen's* assumption that the Bankruptcy Code authorizes the Court to permit professionals to *apply* estate funds to current billings prior to Court approval of the compensation sought. Neither Section 330 or 331 provides authority for the outright payment of professional fees prior to at least interim scrutiny by the Court. The legislative history of Section 331 made clear that the *"only* effect of this section is to remove any doubt that officers of the estate may *apply for,* and the court may *approve,* compensation and reimbursement during the case, instead of being required to wait until the end of the case." H.R.Rep. 595, *supra* (emphasis added). Although Section 331, in rare cases and with leave of court, authorizes monthly *applications*[6] for the allowance of

---

timely filed, the Debtors do not pay either law firm until the quarterly statements are approved by the bankruptcy court.
*Knudsen,* 84 B.R. at 669–70. The same procedure was approved for payment of accountants and committee counsel in the case.

5. The *Knudsen* panel listed four methods of assuring recovery of fees paid to professionals under the monthly payment order that are later disapproved by the court:

> [R]etainer payments are for only a percentage of the amount billed so that the likelihood or necessity of repayment is minimal; counsel can post a bond covering any possible reassessment; counsel's financial position makes it certain that any reassessment can be repaid;

funds paid prior to allowance are held in a trust account until a final or interim fee allowance is made. If the funds are recoverable and if adequate opportunity for review of detailed fee requests is provided, the court's control over the funds is undiminished.
*Knudsen,* 84 B.R. at 672. The panel did not determine which method or methods should be utilized in connection with the professionals paid in the *Knudsen* case.

6. Bankruptcy Rule 2016 and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Under 11 U.S.C. § 330 require an applicant to make detailed disclosures of services rendered, time and rates charged, expenses incurred, benefits to the estate, etc., so that the

compensation, it does not authorize *payment* of a professional's compensation until the court reviews the application under the standards set forth in Section 330 and allows disbursement after notice and an opportunity for objections to be heard.

In order to avoid the inevitable conclusion that Section 331 did not provide support for the payment of professional fees prior to court approval, the *Knudsen* panel relied upon Section 328—Limitation on Compensation of Professional Persons—which provides that—

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a). Although the *Knudsen* panel agreed that "allowance of fees is permitted only in accordance with sections 330 and 331," the panel "disagree[d], however, that sections 330 and 331 absolutely prohibit the transfer of funds to professionals prior to compliance with those sections." *Knudsen*, 84 B.R. at 671. The panel reasoned that—

> Section 328(a) specifically states that a bankruptcy court may authorize a retainer as part of a compensation agreement. A retainer contemplates the payment of a

lump sum at the beginning of the case or periodically thereafter. Period retainer payments could be either set amounts or a percentage of fees incurred in prior months. Legal fees and costs may then be deducted from the retainer as they accrue and are allowed by the court. It makes little sense that the court could allow payment of a lump sum or periodic retainer before fees are earned, but not after. The critical factor is that the fees must not be finally allowed (i.e., they must be subject to repayment) until a detailed application is filed, an opportunity for objection has been provided, and the court has reviewed the application.

*Id.*

■ This is where this Court departs from *Knudsen* in its interpretation of the compensation provisions of the Bankruptcy Code. Section 331 is clear that application for and allowance of fees are *statutory pre-requisites* to the payment of interim compensation. The "post-petition retainer" concept as utilized in *Knudsen* undermines Congress's intent in enacting Section 331. Further, the *Knudsen* "post-petition retainer" is not really a retainer at all. In *Knudsen*, funds were paid outright to a professional *after* services were rendered but *before* fees and expenses were allowed, subject only to disgorgement. The character of this type of payment is identical to an interim payment under Section 331, where again, funds are authorized to be transferred outright to a professional subject only to disgorgement after a final review by the Court. The Court cannot ignore Section 331's specific command that interim payments, regardless of what they are called, may be distributed only after application, notice, review and a court order.[7]

Even if this Court were persuaded to permit monthly transfers of funds to profession-

---

Court's review is meaningful and serves the purpose of safeguarding the estate.

7. Under the rules of statutory construction, the "retainer" language of Section 328(a) should not be construed in a way that negates the specific mandates of Section 331. "It is an elementary tenet of statutory construction that '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one'." *Guidry v. Sheet Metal Workers National*

*Pension Fund*, 493 U.S. 365, 375, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), *quoting Morton v. Mancari*, 417 U.S. 535, 550–551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). *See also, In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D.Md.1993) ("to allow application of the retainer without bankruptcy court approval would emasculate the specific requirement of § 331 for an award of compensation").

als in the form of a post-petition retainer, such funds would have to be segregated as trust funds until a fee application is submitted and compensation and reimbursement are allowed. The Court does not believe that this is the type of the relief that CFS and the Committees desire, however.[8] Certain professionals that have been retained by the estate in this case *already* hold retainers in significant amounts.[9] Upon the Court's interim allowance of compensation to these professionals, funds will be immediately available from trust accounts controlled by professionals. There is no allegation that the estate is or is in danger of becoming administratively insolvent or that there is a need to segregate further estate funds to insure availability for the payment of professionals.

■ Section 331 permits the Court to grant leave to file more frequent interim applications for compensation and reimbursement. This Court will permit such relief to professionals who present credible evidence that complying with the 120–day rule will impose serious financial hardship. Hardship is pleaded in the instance of Tomlins & Goins' representation of CFS. Upon the receipt of an affidavit containing sufficient evidence to make a finding of serious financial hardship,[10] the Court will enter an order granting Tomlins & Goins leave to file its applications for fees and expenses more often than every 120 days. Tomlins & Goins should state in its affidavit the frequency of payment necessary to avoid serious financial hardship. In the event that other professionals experience serious hardship by virtue of compliance with the statutory compensation schedule, the Court will consider granting similar relief upon receipt of similar affidavits evidencing the circumstances of such hardship.[11]

**SO ORDERED.**

■

8. This Court has previously held in this case that retainers must be held in trust until fees and expenses are allowed by the Court after application and notice. *See also Snyder v. Dewoskin (In re Mahendra),* 131 F.3d 750, 756 (8th Cir.1997). Rule 1.15 of the Oklahoma Rules of Professional Conduct provides that "[w]hen ... a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests." No severance of interests occurs in a bankruptcy proceeding until fees are approved.

9. Professionals retained by CFS hold pre-petition retainers as follows: Jenner & Block, $750,000; Tomlins & Goins, $75,000; Development Specialists, Inc., $350,000.

None of the professionals employed by the Official Unsecured Creditors' Committee were permitted to retain pre-petition retainers that had been paid by CFS, due to the circumstances under which retainers were paid and potential conflicts raised thereby, *i.e.,* no Official Committee existed at the time the retainer was paid and there was no evidence regarding the Committee's entitlement to payment of the pre-petition retainer by CFS. No retainer was ever paid to the Johnson, Allen firm by CFS.

Professionals seeking to be employed by the estate on behalf of the Official Asset Backed Security Holders Committee (the "ABS Committee")—Fried, Frank, Harris, Shriver & Jacobson, Gable & Gotwals, and Houlihan, Lokey—also hold funds paid by CFS pre-petition, although their entitlement to retain the funds has not yet been determined.

The Court notes that CFS's management consultant, Development Specialists, Inc. ("DSI"), has previously been authorized to invoice CFS on a bi-monthly basis, and CFS has been authorized to pay such invoices, with respect to Mr. Caruso's compensation as president of CFS. The salaried nature of Mr. Caruso's compensation is justified in light of the fact that he is an officer of CFS and officers of CFS have been compensated on a regular salaried basis in the ordinary course. DSI is subject to the application procedure required of other professionals with respect to services rendered by all employees of DSI other than Mr. Caruso. The payment of Mr. Caruso's salary is also subject to periodic Court review.

10. An allegation of hardship to Tomlins & Goins was made in CFS's Motion and brief, but no evidence was presented at the hearing to substantiate the allegation. Because no substantive opposition was registered at the hearing as to the broader relief requested by CFS, no further notice or hearing regarding this narrower relief is necessary.

11. The argument that "professionals should not be required to finance a debtor's bankruptcy case" is unavailing. Congress has already determined that professionals ordinarily will finance their own administrative claims for 120 days at a

time. *See* 11 U.S.C. § 331. To the extent that professionals are prejudiced in any way by an undue delay in payment, the matter may be addressed in the final application for compensation. However, courts have held that even where a professional's compensation has been delayed for the entire term of the case, such professional is not entitled to interest on its administrative claim, given the contingent nature of the claim (that is, subject to final review and disgorgement) under Sections 330 and 331. *See, e.g., In re Child World, Inc.,* 185 B.R. 14, 18 (Bankr.S.D.N.Y.1995) (professionals are not entitled to interest on sums "held back" from al-

lowed interim compensation "[a]s there is not legal entitlement to payment prior to the final fee award ... any claim to 'interest' ... is, legally speaking, groundless") (*quoting In re Public Service Co. of New Hampshire,* 138 B.R. 660, 662 (Bankr.D.N.H.1992); *see also In re Commercial Consortium of California,* 135 B.R. 120, 127 (Bankr.C.D.Cal.1991) (interest may be paid only where fees remain unpaid after they are *allowed* ) *citing In re D.W.G.K. Restaurants,* 106 B.R. 194, 198 (Bankr.S.D.Cal.1989) and *In re Energy Co-op., Inc.,* 95 B.R. 961, 968 (Bankr.N.D.Ill.1988) (three years between order allowing fees and payment justified interest)).