**DUNKIN'S DIAMONDS, INC., et al.**

Dunkin's Diamonds of Ohio, Inc.

Dunkin's Diamonds & Gold
of Newark, Inc.

Dunkin's Management of
Port Charlotte, Inc.

Chavis and Dunkin's Management,
L.L.C.

Dunkin's Diamonds by Lenny, Inc.

Nos. 9:08–bk–17618–ALP, 9:08–bk–17613–ALP, 9:08–bk–17614–ALP, 9:08–bk–17615–ALP, 9:08–bk–17616–ALP, 9:08–bk–17617–ALP.

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Dec. 15, 2009.

Stephen R. Leslie, Esq., Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Debtors.

Heather L. Yonke, Esq., Genovese, Joblove & Battista, P.A., Miami, FL, for the Official Committee of Unsecured Creditors.

Richard J. Hollander, Esq., Miller and Hollander, Fort Myers, FL, for Stuart B. Dunkin.

J. Steven Wilkes, Esq., U.S. Dept. of Justice, Office of the U.S. Trustee for Region 21, Tampa, FL, for U.S. Trustee.

*FINAL ORDER ON APPLICATIONS FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES OF IAN WINTERS, ESQ., OF THE LAW FIRM KLESTADT & WINTERS, L.L.P., NEW YORK CO-COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (Doc. Nos. 313 & 337). AND THE OBJECTIONS TO SAME BY THE UNITED STATES TRUSTEE (Doc. No. 380) AND THE DEBTORS' PRINCIPAL, STUART DUNKIN (Doc. No. 352)*

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THIS IS a confirmed Chapter 11 set of jointly administered cases and the matters under consideration by the Court in this instant final order are the applications for compensation and reimbursement of expenses of Ian Winters, Esq., of the law firm Klestadt & Winters, L.L.P., P.A., New York counsel of record for the Official Committee of Unsecured Creditors in the above captioned jointly administered chapter 11 cases. (Doc. Nos. 243, 281, and 310). Also considered were this Court's interim and prior orders on compensation to Mr. Winters, (Doc. Nos. 313 and 337), together with the amended objection to compensation filed by the United States Trustee for Region 21, (Doc. No. 380 amending 359), and the motion to alter or amend the prior orders of compensation filed by the Debtors' principal Mr. Stuart Dunkin. (Doc. No. 352). Upon conclusion of the hearing conducted on September 1, 2009, this Court took the matters under advisement, and now finds and concludes the following.

*Statement of the Case*

On November 6, 2008, the debtors filed petitions under Chapter 11 of Title 11, United States Code. This Court subsequently ordered that the chapter 11 cases be jointly administered, and on August 5, 2009, a Joint Plan of Reorganization was confirmed.

With regards to the Compensation Applications of Mr. Winters, this Court approved his employment as New York co-counsel for the Official Unsecured Creditors Committee, on December 27, 2008, retroactive to November 24, 2008. Mr. Winters has filed an interim fee application and two supplementals seeking compensation of fees in the amount of $81,890.50 and reimbursement of expenses of $1,074.44.

*Jurisdiction*

The applications and objections filed against them and the compensation orders all constitute a contested matter and are a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O); 11 U.S.C. §§ 330 and 331; Fed. R. Bankr.P.2016, 9013, and 9014. This Court has jurisdiction to hear, determine, and enter appropriate orders under 28 U.S.C. §§ 157, 1334.

*Discussion*

A review of professional fees begins with the statutory framework set out in 11 U.S.C. §§ 327–330. *See Miller Buckfire & Co., LLC v. Citation Corp. (In re Citation Corp.),* 493 F.3d 1313, 1318 (11th Cir.2007). Mr. Winters was employed under Section 1103(a) which authorizes the Committee to employ professionals, with this Court's ap-

proval, "to represent or perform services for such committee."

 It is uniformly recognized in the Eleventh Circuit, that the starting point for calculating reasonable attorney's fees is that of the lodestar method. *See Citation*, 493 F.3d at 1318; *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 878 (11th Cir.1990); *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988). *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). Simply put, the "lodestar method," is a computation of the reasonable time expended by counsel in performing the reasonably required services rendered multiplied by a reasonable hourly rate.

 At the September 1, 2009 hearing, Mr. Dunkin raised objection to the hourly rate of Mr. Winters. Mr. Dunkin asserts that Mr. Winters' hourly rate increased from $440 to $465 for work done after January 1, 2009. The U.S. Trustee stated on the record on September 1, 2009, that it is customary for his office to review hourly rate increases during the pendency of a case. In this case, the application of Mr. Winters stated his hourly rate at $465, and this Court approved his employment based in part upon those assertions.

The U.S. Trustee stated at the hearing that his office did inquire with Mr. Winters and discovered that the work done by Mr. Winters in 2008 was billed at Mr. Winters' 2008 hourly billing rate. The application did contemplate hourly rate increases. As all parties were on notice of Mr. Winters' 2009 hourly rate, and no objection was raised at the application for employment phase, this Court does not find that the 2009 hourly rate is unreasonable for New York co-counsel to the Official Committee. Further, the applicant was approved at $465 hourly, and could have billed at that rate for all time entries of Mr. Winters.[1] Had that occurred, it is doubtful that an objection to his hourly rate would have been raised at his final application for compensation. Mr. Winters billed 71.9 hours in calendar year 2008.[2] By billing at 2008 and 2009 rates, Mr. Winters in essence did not bill $1,797.50 due to his billed time being computed at the 2008 hourly rate. Under the facts and circumstances of this case, Mr. Winters' hourly rates billed by his firm are reasonable.

 Procedurally, Mr. Winters, has not filed a Final Fee Application. Rather, Mr. Winters filed his First Interim Application, (Doc. No. 257), on May 20, 2009. That application was supplemented, (Doc. No. 282), on June 16, 2009. Right on its heels Mr. Winters filed a Second Supplemental Application, (Doc. No. 312), on June 30, 2009. The U.S. Trustee objected to the timing of these multiple interim fee applications. In accordance with Section 331, interim compensation may not be awarded more than once every 120 days. "Section 331 is intended to alleviate the unwarranted financial burden on professionals that occurs when judicial scrutiny, allowance, and payment of fees applications is withheld until the conclusion of the case, as contemplated by Section 330." *In re Commercial Financial Services, Inc.*, 231 B.R. 351, 354 (Bankr.N.D.Okla.1999). Section 331 does permit, upon finding of cause by the Court, for a reduction of the time period of 120 days. This requires a find-

---

1. The Court is mindful that no objection to fee increases of Mr. Winters' law firm associates or paraprofessionals was raised by any party. All individuals, save for Mr. Patrick Fleming, had hourly rate increases effective January 1, 2009.

2. There is a significant duplicate entry for 14 hours in Mr. Winters' 2008 billing. That duplication is addressed in this order, *infra*.

ing by the Court on a case by case basis. The case does not raise unusual circumstances warranting more frequent applications, and professionals did not seek permission by this Court under Section 331 to submit compensation applications on a more frequent basis.

In resolution of the U.S. Trustee's objection to the timing of Mr. Winters' compensation applications, the U.S. Trustee and Mr. Winters arrived at a consensus to treat them all together as a final fee application governed by Section 330(a), title 11, United States Code. One reason for obtaining this consensus is that Mr. Winters agreed not to seek further professional fees for services provided to the Official Committee after June 30, 2009. It is unclear whether Mr. Winters provided any additional services to the Official Committee after June 30, 2009. However, the concession made by Mr. Winters and the U.S. Trustee, to treat all of the compensation applications as a final application under Section 330, does accomplish the goal of bringing finality and a final adjudication under Section 330. This Court thereby finds and concludes that Mr. Winters' application (and its supplementals), are to be considered together as a final fee application under Section 330(a).

▆ Mr. Dunkin, objects to Mr. Winters' application, and raises allegations of duplicate charges and billing errors shared between Mr. Winters' law firm and that of Mr. Paul Battista, Esq. of Genovese, Joblove & Battista, P.A., a Miami law firm approved as co-counsel to represent the Official Committee. Mr. Dunkin objects to approximately $45,000 of duplicate time entries and duplicative work conducted by both law firms representing the Official Committee.[3] It appears by Mr. Dunkin's listing of objectionable time entries, that approximately $27,697.50 of objectionable time is being sought by Mr. Winters. A single duplicated entry by Mr. Winters, totaling $6,160 on November 25, 2008, should have been a glaring error caught by not only the para-professionals working for Mr. Winters, but Mr. Winters himself before submitting his time billing. Alas, this oversight was missed by Co–Counsel to the Official Committee, as was a time entry for work done prior to the retroactive employment approval date.[4]

The U.S. Trustee likewise raises objections to Mr. Winters' fee applications on grounds of compensation of services rendered prior to approval for employment, duplicate time entries, duplication of services provided between his firm and that of Mr. Battista's firm, as well as lumping of time entries, insufficient task detail, and/or basis for having multiple attendees at conferences, meetings, and court hearings. Prior to the hearing, the U.S. Trustee and Mr. Winters arrived at a proposed settlement of the U.S. Trustee's objections to compensable time. Under that agreement, Mr. Winters has agreed to reduce his overall professional compensation request by removing the compensation sought prior to court approval for employment and dupli-

---

3. Mr. Battista's fee application is also the subject of objections by Mr. Dunkin as well as the U.S. Trustee and are the subject of a separate order.

4. Generally a professional cannot receive compensation for services rendered in a bankruptcy case prior to the approval of the professional's employment under Sections 327, 328, or 1103 by the bankruptcy court. In his

application for employment, Mr. Winters sought retroactive approval. Without objection, that retroactive approval was granted. Here, Mr. Winters was able to fashion his compensable start date. With the objection by the U.S. Trustee to time entries for work done prior to the retroactive approval date, it goes without saying that Mr. Winters misfashioned his firm's compensable start date.

cate time entries, as well as an overall reduction of the remaining amount by 10%, for a total reduction of $13,941.74.

In accordance with Fed. R. Bankr.P. 2016, the applicant is required to provide sufficient detail. The U.S. Trustee has the statutory obligation to "review, in accordance with procedural guidelines.., applications filed for compensation and reimbursement under section 330 of title 11." 28 U.S.C. § 586(a)(3)(A)(i). In furtherance of that mandate, the Executive Office of the United States Trustee promulgated in 1994 the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330.* 61 F.R. 24890, May 17, 1994. These guidelines were not written in a vacuum, but rather on a foundation of case law spanning both the Bankruptcy Act and Code.

 Prior to the United States Trustee program, it was the Bankruptcy Court that held an independent mandate to review fee applications. That requirement still exists independently with the Court, but is also held concurrently with that of the United States Trustee. Case law supports the objections raised by the U.S. Trustee. Neither the Eleventh Circuit nor the Middle District of Florida permit "lumping" of discreet entries together into singular time entries. *See In re Beverly Manufacturing Corp.,* 841 F.2d 365, 370 (11th Cir.1988); *In re Mulberry Phosphates, Inc.,* 151 B.R. 948, 950 (M.D.Fla.1992)("Applicants cannot circumvent the requirements of detail by 'lumping' together several activities into a single entry"). Lumping is impermissible because it fails to shed the requisite light upon the activities for the Bankruptcy Court to determine "whether or not the time spent on a specific task was reasonable" and beneficial or even necessary. *See Mulberry,* 151 B.R. at 950.

 Counsel for the Official Committee have an obligation to their client, the committee, as well as to the bankruptcy estate to keep professional costs to a minimum. Mr. Dunkin raised that as an objection and included correspondence apparently between members of the Official Committee and their putative co-counsel. Although co-counsel may have projected a range of professional costs, the complexities of any given case must also be taken into account. The alleged correspondence between putative co-counsel and the Official Committee, although interesting in and of itself, it was allegedly written early in the case and prior to several changes in ultimate direction the case took overall. This Court does not consider that alleged correspondence relevant in conducting its review under Section 330 at this time in the case. However, part of the criteria for attorney fee awards to creditors' committee counsel include a quantity factor as well as a result factor.

Mr. Winters, as New York co-counsel, does appear to perform many of the same functions as that of Mr. Battista, as local co-counsel to the Committee. This duplication of work appears to impact the efficiency, economy, and necessity of these two professionals' services provided to their client and ultimately impacts the bankruptcy estate. While all parties were on notice that the Committee was utilizing co-counsel, duplicity of services provided are not generally warranted. As seen here, Mr. Dunkin alleges that duplicity and necessity increased the overall Official Committee counsels' costs by over $45,000. By maintaining a cost benefit analysis of professional billing, counsel for the Committee ensures that their actions secure a results driven outcome; here the bottom line amount recovered for the estate and its creditors.

■ This Court is troubled that Mr. Winters would present a fee application seeking $64,100 in fees with a $6,160 duplicate time entry. *See* (Doc. No. 257, Proj. Billing–Cash Coll, pp. 1–2). This duplicate entry constitutes almost 10% of the fee application. The duplicate entry is not hidden from the reviewer. It is the first entry on the project billing, Cash Coll, at page 2, Slip ID 146849, and the last entry on the immediately preceding page 1, Slip ID 154040. Further, the language is verbatim in the two time entries. However, the Court is mindful that we are all human and errors do occur.

As an officer of the Court, it is axiomatic that when an error is discovered, to the extent possible the error is not only brought to the attention of the tribunal, but also rectified. Here, Mr. Winters had no less than three (3) independent times to rectify this duplication error with this Court. Mr. Winters filed a First Supplemental on June 18. (Doc. No. 282). Mr. Winters filed a Second Supplemental on June 30. (Doc. No. 312). He received and reviewed the order on allowance of interim compensation, which this Court entered on July 1. (Doc. No. 313). Finally, after this Court entered an order deferring ruling on fee applications, (Doc. No. 324), his Co–Counsel to the Official Committee prepared a proposed order on the allowance of Mr. Winters' fee application and presented it to this Court for entry, which this Court entered. (Doc. No. 337). It does not appear by the record in this case that Mr. Winters sought to present this duplicate time entry error to this Court or rectify its approval, save for discussions directly with either counsel to Mr. Dunkin or the U.S. Trustee in responding to their objections.

■ Mr. Winters' law firm billed 12.5 hours for drafting, reviewing, and preparing his firm's fee application, of which 5.6 hours were billed by Mr. Winters. It is Mr. Winters that holds the professional responsibility and obligation to review his time entries and oversee his para-professionals assisting him and their work product. This Court finds and concludes that additional reduction, above that of the agreement between Mr. Winters and the U.S. Trustee is warranted in this case. Mr. Winters' hourly billings for reviewing his fee applications are additionally disallowed. Under the facts of this case, this Court concludes that the agreement reached between the U.S. Trustee and Mr. Winters, together with an additional reduction of 5.6 hours or $2,604, strikes a balance and is reasonable to address the objections raised by not only Mr. Dunkin, but also by this Court. However, that does not completely resolve the professional compensation matter.

■ This Court also must review professional compensation to determine the impact upon, and what is in the best interests of, the creditors and the bankruptcy estate. Mr. Dunkin owns the interests in the jointly administered debtors. His interests are provided for under Class 10 of the confirmed plan. Had this Court awarded Mr. Winters 100% of his compensation, that compensation would have been paid in full under Article 2 of the confirmed plan prior to Mr. Dunkin receiving any distribution. As this Court has found and concluded that Mr. Winters' professional compensation is due to receive a bankruptcy haircut, those clippings fall down to the classes of claims. This Court finds and concludes that the reduction in professional compensation allowed to Mr. Winters is to inure to the benefit of the General Unsecured Creditors.

Accordingly, it is

ORDERED, ADJUDGED, AND DECREED that the Motion to Alter or Amend Order Granting Amended First

Supplement Application of Ian Winters, (Doc. No. 352), filed by the party in interest, the Debtors' Principal, Stuart Dunkin, be and is hereby SUSTAINED in part and denied in part. It is further

ORDERED, ADJUDGED, AND DECREED that the Omnibus Objection filed by the United States Trustee, as amended, (Doc. Nos. 380 amending 359), to the extent of the objections raised to the Applications and interim compensation of Ian Winters, be and is hereby SUSTAINED. It is further

ORDERED, ADJUDGED, AND DECREED, that the First Interim Order Allowing Compensation to Ian Winters, entered under Section 331 by this Court, (Doc. No. 313), be and is hereby AMENDED and SUPERCEDED by this Final Order. It is further

ORDERED, ADJUDGED, AND DECREED, that the Second Order Allowing Compensation to Ian Winters, entered by this Court, (Doc. No. 337) be and is hereby AMENDED and SUPERCEDED by this Final Order. It is further

ORDERED, ADJUDGED, AND DECREED that in accordance with 11 U.S.C. § 330, the Applications of Ian Winters, of the law firm Klestadt and Winters, L.L.P., as New York co-counsel to the Official Committee of Unsecured Creditors be, and are hereby, finally APPROVED in the following total amounts:

(A) Professional Fees—$65,344.76 for reasonable professional services rendered from November 24, 2008 to the entry date of this order; and

(B) Expenses—$1,074.44 for the reasonable and necessary expenses incurred in provided the professional services stated above.

It is further

ORDERED, ADJUDGED, AND DECREED that the reduction in compensation, totaling $16,545.74 shall be paid in addition to the "Debtor shall fund an initial sum of $100,000 in December 2009," (Plan 4.9.2), and shall be disbursed to Class 8 General Unsecured Claims in accordance with the first Distribution Date contemplated in the Plan to Class 8 claimants. (Plan 4.9.2).

DONE and ORDERED.